# Richmond.

## DAVENPORT & MORRIS v. RICHMOND CITY.

### APRIL 15th, 1886.

1. MUNICIPAL CORPORATIONS—*Police—Nuisances.*—Storage of gun-powder in a city being dangerous, its regulation is a matter within the power of the corporate authorities, and their judgment, as expressed in an ordinance requiring the removal of powder magazines, is conclusive upon the courts.

2. CONTRACTS—*Constitution—Police power.*—An ordinance requiring the removal of powder magazines in a city, the sites whereof were sold by the city council to vendees for the purpose of erecting thereon such magazines, does not impair the obligation of a previous valid contract with that council and does not take private property without compensation; but is constitutional, being a valid exercise of the police power.

Error to judgment of hustings court of city of Richmond rendered November 28, 1883, upon appeals from judgments of police court of said city rendered against Davenport & Morris and H. M. Wortham, severally, at the suit of the city of Richmond, and in affirmance of the judgments of the police court. These appeals were heard together by consent.

By deed of May 25, 1866, the council of said city for value, conveyed to parties under whom H. M. Wortham claims, with general warranty, a lot of land near the outskirts of the city, "to be used by them as a powder magazine, subject to such regulations relative to the storage, receipt, delivery and transportation of powder, as the council may prescribe." A similar conveyance

was made by deed dated February 5, 1867, by the city council to parties under whom Davenport & Morris claim magazines now erected on these lots at cost of $1,200 each. An ordinance prohibits any person from keeping more than twenty-five pounds of powder in the city elsewhere than in a "magazine approved by the council." An ordinance passed August 17, 1882, without the knowledge of Wortham or Davenport & Morris, declared their said magazines dangerous to life and property, and directed them "to be removed, *at the expense of the owners*, to some more remote locality."

On August 15, 1883, Wortham was summoned before a police justice to show cause why he should not be fined fifty dollars for violating the ordinance forbidding the keeping of more than twenty-five pounds of power in the city elsewhere than in a magazine, approved by the council. And a fine of ten dollars was imposed on him. Similar proceedings were had against, and a like fine was imposed on, Davenport & Morris. From these judgments appeals were had to the hustings court, by which they were affirmed, and to the judgments of affirmance writs of error and *supersedeas* were obtained by the defendants to this court.

Opinion states the case.

*James N. Dunlop*, for the plaintiff in error.

*C. V. Meredith*, for the defendant in error.

LEWIS, P., delivered the opinion of the court.

It is contended that the ordinance complained of is unconstitutional and void—first, because it impairs vested rights of the defendants under a previous valid contract with the city council; and second, because it takes the property of the defendant without compensation.

Upon the principles recognized by this court in *R. F. & P. R. R. Co.* v. *City of Richmond*, 26 Gratt. 83, we are of opinion that this position is not well taken.   In other words, that the withdrawal of the privilege previously granted to the defendants—to erect and maintain a powder magazine within the city limits—was the valid exercise of the police power, with which, to that extent, the city is invested by the legislature, and with reference to which the privilege was granted and accepted. And hence the inconvenience of which the defendants complain is *damnum absque injuria.*

However difficult it may be, if it is possible at all, to exactly define the limits of that power, there is no doubt that it extends to the protection of the lives, health, morals, and safety of all persons in the community, and that it cannot, by contract or otherwise, be parted with by a municipal corporation to which it may be delegated.   This question was very fully discussed by Judge Christian in delivering the opinion of the court in the case just mentioned.   There the validity of an ordinance, forbidding the railroad company to propel its engines and cars by steam on Broad street in this city, was assailed by the company, on the ground that it violated the contract rights of the company under its charter and the previous action of the city council.   But the ordinance was held to be valid.

It may be, said the court, that the company is the loser by the ordinance in question, but upon well established principles it has no claim for compensation, because there has been no appropriation of its property, but only the regulation of *the mode* in which its chartered rights are to be exercised.   It was also said that every person holds his property subject to the limitation expressed by the maxim, *sic utere tuo ut alienum non laedas*, exercised either by the legislature directly or by public corporations to which the legislature may delegate it.   That all laws and ordinances relating to the safety, comfort, health

and general welfare of the inhabitants, commonly called police laws and regulations, are not invalid though they disturb the enjoyment of individual rights, and make no provision for compensation for such disturbances.    That the power to restrain a private injurious use of property is very different from the eminent domain.    That under the latter, compensation must always be made.    But under the former it is not a taking of private property for public use, but the salutary restraint of a noxious use by the owner contrary to the maxim above referred to.    And among the familiar examples of the exercise of this power by all well ordered governments, the court mentioned laws and ordinances prohibiting the storage of gunpowder in populous places, the use of buildings as hospitals for contagious diseases, the carrying on of noxious or offensive trades, and the like.

Dissatisfied with the judgment of this court, the company took the case on a writ of error to the Supreme Court of the United States, and there the judgment was affirmed.

In the opinion of the latter court it was held:    1. That the ordinance did not impair the rights of the company under its charter;    2. That it did not deprive the company of its property without due process of law; and 3. That it did not deny to the company the equal protection of the laws.

"The power to govern," said the court, "implies the power to ordain and establish suitable police regulations," and "it is not for us to determine in this case whether the power has been judiciously exercised.    Our duty is at an end, if we find that it exists."    And further it was said, that "appropriate regulation of the use of property is not the 'taking' of property within the constitutional prohibition."    *Railroad Company* v. *Richmond,* 96 U. S. 521.

In *Presbyterian Church* v. *The Mayor, &c., of New York,* 5 Cow. 538, an action was brought for an alleged breach of cov-

enant for quiet enjoyment in a deed executed by the defendants conveying certain land, for a valuable consideration, for the purpose of a church and cemetery. The plaintiffs averred performance on their part of the conditions of the deed, and that the covenant had been broken by the defendants by reason of their by-law, passed many years after the execution of the deed, prohibiting the further use of the premises as a cemetery. Judgment, however, was rendered for the city, the court holding that the by-law in question was not a breach, but a repeal of the covenant in the deed, and that a municipal corporation cannot, by contract, abridge its legislative powers.

The principle upon which the case was decided is so clearly expressed by the court that we quote from its opinion the following extract: "The defendants," it was said, " are a corporation. * * They are considered a person in law within the scope of their corporate powers, and are subject to the same liabilities, and entitled to the same remedies, for the violation of contracts as natural persons. They are also clothed with legislative powers, and in the capacity of a local legislature are particularly charged with the care of the public morals and the public health within their own jurisdiction.

"In ascertaining their rights and liabilities as a corporation, or as an individual, we must not consider their legislative character. They had no power, as a party, to make a contract which should control or embarrass their legislative powers and duties. Their enactments in their legislative capacity are to have the same effect upon their individual acts as upon those of any other persons, or the public at large, and no other effect.

"The liability of the defendants, therefore, upon the covenant in question must be the same as if it had been entered into by an individual, and the effect of the by-law upon it the same as if that by-law had been an act of the State legislature.

It is expressly authorized by the legislature, and whether it be their act or an act of the local legislature makes no difference."

In the subsequent case of *Coates* v. *The Mayor, &c., of New York,* 7 Cow. 585, it was held in respect to the same by-law, that it was not unconstitutional, either as impairing the obligation of contracts or taking private property for public use without just compensation; but that it was clearly valid as a police regulation in respect to nuisances. And it was also held, that a by-law, which is otherwise valid, need not recite on its face that it is necessary, but that such necessity is implied by the act of passing it. "It is of the nature of legislative bodies," said the court, "to judge of the exigency upon which their laws are founded; and when they speak, their judgment is implied in the law itself. It is sufficient, therefore, to set it forth in pleading. This is equivalent to an averment that the exigency has arisen, been adjudicated and acted upon. All to be shown beyond this is matter by which the court may see that the law operates upon the subject of the power. The implied adjudication is then taken as conclusive."

In *Lake View* v. *Rose Hill Cem. Co.,* 70 Ill. 191, the court, speaking of the police power, says: "As a general proposition, it may be stated, it is the province of the law-making power to determine when the exigency exists, calling into exercise this power. What are the subjects of its exercise is a judicial question." See also, Matter of Application of Jacobs, 98 N Y. 98.

The same principle was acted upon in *City of Salem* v. *Eastern Railroad Co.,* 98 Mass., 431, wherein certain proceedings of the board of health of the city were objected to, because they had been taken without previous notice to the parties affected thereby. But the objection was not sustained. See also *Foote*

v. *The Fire Department, &c.,* 5 Hill, 99; *Metropolitan Board of Health* v. *Heister,* 37 N. Y. 661; *Slaughter House Cases,* 16 Wall., 36; *Beer Co.* v. *Massachusetts,* 97 U. S., 25; *Butchers' Union Co.* v. *Crescent City Co.,* 111 Id., 746; *Justice* v. *Commonwealth, ante* p. 209.

These principles apply to and are decisive of the present case. It is needless, therefore, to inquire whether a powder magazine, in a populous part of a city, is at common law a nuisance *per se,* though there are authorites which hold that it is. 1 Russ. on Crimes, 321; *Cheatham* v. *Shearon,* 1 Swan (Tenn.), 213. It is sufficient to say that the storage of gunpowder in a city or town being attended with danger, its regulation is a matter within the power of the corporate authorities, and, consequently, the judgment of the city council as expressed in the ordinance requiring the removal of the magazines in question, is conclusive upon the courts.

The hustings court, therefore, did not err in instructing the jury that "the fact that the city of Richmond, in 1866, sold to the defendants, or to those under whom they claim title, the site of the powder magazines now ordered by the council to be removed, for the purpose or with the knowledge that the same was to be used for the erection of powder magazines, does not prevent the city council from passing the ordinance of August 17, 1882, if, in the judgment of that body, the safety or convenience of the people demands the removal of said magazines."

It was also contended, in the argument for the city, that the power conferred upon the corporation by its charter to "provide suitable magazines in or near the city for the storage of gunpowder or other combustible and dangerous articles," cannot be delegated by the city to others, and therefore that the original grant of the privilege to the defendants was *ultra vires* and void. But as what has already been said sufficiently

disposes of the case, it is unnecessary to pass upon that question. The judgment is affirmed.

FAUNTLEROY, J., and RICHARDSON, J., dissented.

JUDGMENT AFFIRMED.