(77 South. 383)

STANDARD CHEMICAL & OIL CO. v. CITY OF TROY. (4 Div. 745.)

(Supreme Court of Alabama. Dec. 20, 1917.)

1. MUNICIPAL CORPORATIONS ☞592(1)—ORDINANCES—VALIDITY.

It is no objection to a municipal ordinance not in contravention of a state law that it affords additional regulation complementary to the end state legislation would effect.

2. LICENSES ☞1—POLICE POWER—EXERCISE.

Ordinances imposing a regulatory privilege tax on manufacturing plants, enacted under the police power to conserve the general substantial public welfare of the immediate community, wherein they have application, and which are reasonably necessary to that end, will be held to have been adopted in the proper exercise of the police power for the purpose of regulation, and not taxation, the police power carrying with it the power to raise, by reasonable license taxes, funds to effectuate the police regulation.

3. LICENSES ☞1—POLICE POWER—LICENSE TAXES—VALIDITY.

Though the original charter of a city contained no provisions authorizing it to exercise police power and jurisdiction outside of its corporate limits, Code 1907, § 1230, applicable to cities of that class, extended the police jurisdiction of cities having 6,000 or more inhabitants to cover all adjoining territory within three miles of the corporate limits, and in cities having less than 6,000 inhabitants to cover all adjoining territory within a mile and one-half of corporate limits. Section 1251 authorizes municipal corporations to adopt ordinances and resolutions not inconsistent with the laws of the state to carry into effect or discharge the powers and duties conferred, and to provide for the safety, preserve the health, promote the prosperity, improve the morals, order, comfort, and convenience of the inhabitants. Defendant, engaged in the business of manufacturing and mixing fertilizers and operating an oil mill within the police jurisdiction of the municipality, maintained an office in the city for sale of fertilizer. Held, that a reasonable business license tax imposed on defendant by municipality, in the exercise of its police power, was a valid exercise of the power.

4. MUNICIPAL CORPORATIONS ☞122(2)—ORDINANCES—UNREASONABLE ORDINANCES—BURDEN OF PROOF.

One assailing a statute or an ordinance as discriminatory or unreasonable has the burden of showing that fact.

5. LICENSES ☞7(3)—BUSINESS LICENSE TAXES—DISCRIMINATION.

Defendant which operated a fertilizer plant and oil mill within the police jurisdiction of a city, but outside its corporate limits, and maintained a sales office in the city, cannot defeat the imposition of a business license tax on the ground of discrimination by showing that other manufacturing plants operating and maintaining offices within the police jurisdiction were not taxed, it not appearing such concerns had offices within the city.

6. LICENSES ☞1—POLICE POWER—LICENSE TAXES.

Where a business license tax is imposed by municipality in the exercise of its police power or regulation, reasonable compensation may be charged for the additional expense of municipal supervision over the business or vocation at the place where it is licensed.

Appeal from Circuit Court, Pike County; A. B. Foster, Judge.

Suit by the City of Troy against the Standard Chemical & Oil Company to recover busi-

ness license taxes. From a judgment for plaintiff, defendant appeals. Transferred from the Court of Appeals under Act April 18, 1911 (Acts 1911, p. 449) § 6. Affirmed.

John H. Wilkerson, of Troy, for appellant. C. C. Brannen, of Troy, for appellee.

THOMAS, J. The trial was had by the court without a jury, on an agreed statement of facts. The suit was predicated on ordinances of the city of Troy, being instituted by the municipality, appellee, against appellant, the Standard Chemical & Oil Company, a corporation, and sought to recover of the defendant certain business license taxes claimed to be due by it to the municipality under said ordinances, for the carrying on of the business of manufacturing or mixing fertilizers, and the business of an oil mill.

Count 2 was for license taxes claimed to be due for carrying on the business of manufacturing or mixing fertilizers outside of the corporate limits of Troy, "but within the police jurisdiction thereof"; the defendant having an agency or office in the city of Troy for the sale of fertilizers, and for which business plaintiff had, by an ordinance duly and legally adopted, imposed a license or privilege tax, the ordinance being set out as a part of each count. Count 3 was of like tenor, though it claimed the designated sum as due plaintiff from defendant as license taxes, for the carrying on of "the business of an oil mill * * * outside of the corporate limits of the city of Troy, but within the police jurisdiction thereof." To each count defendant's demurrer was overruled.

The question for decision is, May the city, under a valid ordinance and in the reasonable exercise of its police power, impose a license on a manufacturing business, of the nature here dealt with, operated without the city limits, but within its police jurisdiction? That is to say, does the right to reasonably enforce police and sanitary regulations embrace the right to license and tax businesses carried on without the corporate limits of a city, but within its police jurisdiction, having due regard to the cost to the city of furnishing police protection in the indicated zone, and to the value of the same to the business concerns affected.

Mr. Dillon observes of the exercise of the police power:

"The natural and appropriate, although not the exclusive, function of ordinances is in legislation by the people of the locality, or their duly constituted representatives, for the conduct or government of the municipality and its inhabitants. Such legislation usually relates to the exercise of the police power delegated to the municipality by the Legislature, and is the means by which the municipality exercises the powers of restraint over the inhabitants and the use of property within the territorial limits, which are confided to the municipal government for the general good of the city and its inhabitants. The suppression of nuisances, the preservation of the public health, the prevention of fires, the regulation of trades and occupations and of the use and storage of dangerous articles, the establishment and control of markets, the suppression of disorderly conduct and breaches of the peace and other similar matters, when regulated, controlled, or directed by ordinances, are the result of the exercise by the municipality of the police power of the state under a delegation thereof by statute or by charter. The limitations of the police power have never been defined, and it is probable that no general limit can be placed upon it other than the requirement that its exercise must be confined to those matters which have a real and substantial relation to the public welfare." Mun. Corp. (5th Ed.) vol. 2, § 660.

Treating of paramount police power, Mr. Justice Fields expressed the doubt that the Legislature, by any contract with an individual, could restrain the power of a subsequent Legislature "to legislate for the public welfare, and to that end suppress any and all practices tending to corrupt the public morals." Boyd v. Alabama, 94 U. S. 645, 24 L. Ed. 302. And Mr. Justice Bradley thus defined the power:

"The plaintiff in error boldly takes the ground that, being a corporation, it has a right, by contract, to manufacture and sell beer forever, notwithstanding and in spite of any exigencies which may occur in the morals or the health of the community, requiring such manufacture to cease. We do not so understand the rights of the plaintiff. The Legislature had no power to confer any such rights. Whatever differences of opinion may exist as to the extent and boundaries of the police power, and however difficult it may be to render a satisfactory definition of it, there seems to be no doubt that it does extend to the protection of the lives, health, and property of the citizens, and to the preservation of good order and public morals. The Legislature cannot, by any contract, divest itself of the power to provide for these objects. They belong emphatically to that class of objects which demand the application of the maxim, salus populi suprema lex; and they are to be attained and provided for by such appropriate means as the legislative discretion may devise. That discretion can no more be bargained away than the [police] power itself." Beer Co. v. Massachusetts, 7 Otto (97 U. S.) 25, 33, 24 L. Ed. 989.

This definition of the police power was adopted by our court in American Union Telegraph Co. v. Western Union Telegraph Co., 67 Ala. 26, 32, 42 Am. Rep. 90, where the supremacy of the police power of the state was maintained as to the terms on which foreign corporations may prosecute their business within the state. Van Hook v. Selma, 70 Ala. 361, 45 Am. Rep. 85; B. M. R. Co. v. Parsons, 100 Ala. 662, 13 South. 602, 27 L. R. A. 263, 46 Am. St. Rep. 92; L. & N. R. R. Co. v. Baldwin, 85 Ala. 619, 5 South. 311, 7 L. R. A. 266.

Concerning the exercise of the police power of regulation by license, and its distinction from the exercise of the power to the end of raising revenue, the Supreme Court of New Jersey observes:

"A power to license is of the same nature as a power to regulate. Under a charter authorizing the regulation of a business or occupation, an ordinance compelling persons engaged in such business or occupation to take out licenses may be adopted if a license is an appropriate method of regulating the prosecution of the

business. Burroughs on Taxation, 392. And if the power to license is given in express words, it nevertheless is included in the classification of police powers. * * * The distinction between the power to license, as a police regulation, and the same power when conferred for revenue purposes, is of the utmost importance. If the power be granted with a view to revenue, the amount of the tax, if not limited by the charter, is left to the discretion and judgment of the municipal authorities; but if it be given as a police power for regulation merely, a much narrower construction is adopted; the power must then be exercised as a means of regulation, and cannot be used as a source of revenue. Cooley on Taxation, 408; Cooley on Const. Lim. 201." North Hudson Co. Railway v. Hoboken, 41 N. J. Law (12 Vroom) 71, 79, 81.

That wide discretion is conceded by the courts to the legislative authority in respect of the ground of classification has been recognized by this court. In Board of Commissioners, etc., v. Orr, 181 Ala. 308, 314, 61 South. 920, 922, 45 L. R. A. (N. S.) 575, Mr. Justice Sayre, speaking for the court in this connection, observes that courts—

"must be reluctant to disturb even a municipal ordinance enacted in pursuance of a comprehensive grant of power, and designed presumably to promote the public health and comfort, but the power to condemn is more freely exercised in such cases, for, as to municipal ordinances, it was an ancient jurisdiction of judicial tribunals to pronounce upon their reasonableness and consequent validity. It was always the doctrine of the courts that every ordinance or by-law must be reasonable and not inconsistent with the general principles of the law of the land, particularly those having relation to the liberty of the citizen and the rights of private property. Yick Wo v. Hopkins, 118 U. S. 371, 6 Sup. Ct. 1064, 30 L. Ed. 220."

The subjects and purposes of regulation, with the manner of the exercise of the power, under the police powers of the state and of municipalities, have been often discussed by the courts. For example, the police power has been held to extend to the regulation of slaughtering cattle and of market places (Butchers' Union Co. v. Crescent City Co., 111 U. S. 752, 4 Sup. Ct. 652, 28 L. Ed. 585; Petz v. Detroit, 95 Mich. 181, 54 N. W. 644); to the prohibiting of combinations between connecting lines of railway (L. & N. R. R. Co. v. Kentucky, 161 U. S. 700, 16 Sup. Ct. 714, 40 L. Ed. 849); to declaring liability as for fires caused by engines (St. Louis Railway v. Mathews, 165 U. S. 23, 17 Sup. Ct. 243, 41 L. Ed. 611); to prescribing the manner in which railway crossings shall be kept in repair (Chicago Co. v. Nebraska, 170 U. S. 74, 18 Sup. Ct. 513, 42 L. Ed. 948); to the regulation of the killing and exportation of game (Magner v. People, 97 Ill. 336); to the regulation of telephone rates (Hockett v. State, 105 Ind. 256, 259, 5 N. E. 178, 55 Am. Rep. 201); to the regulation of the transportation of natural gas (Jamieson v. Indiana Gas & Oil Co., 128 Ind. 566, 28 N. E. 76, 12 L. R. A. 656, 660); to the requiring of street railways to sprinkle their tracks (State v. Railroad Co., 50 La. Ann. 1205, 24 South. 271, 56 L. R. A. 287); to quarantine (Davock v. Moore, 105 Mich. 133, 63 N. W. 424, 28 L. R. A. 788); to the regulation of the construction of sewers from adjoining townships (Milburn v. South Orange, 55 N. J. Law, 262, 26 Atl. 75); to prescribing the method of the use of land for burial purposes (Newark v. Watson, 56 N. J. Law, 673, 29 Atl. 487, 24 L. R. A. 843); to the regulation of the storing of gunpowder within designated limits (Davenport v. Richmond City, 81 Va. 642, 59 Am. Rep. 694); to the requiring of property owners to keep sidewalks free of ice and snow (Carthage v. Frederick, 122 N. Y. 277, 25 N. E. 480, 10 L. R. A. 178, 19 Am. St. Rep. 497); to requiring the maintenance of safe cattle guards and crossings (Birmingham R. R. Co. v. Parsons, 100 Ala. 665, 13 South. 602, 27 L. R. A. 263, 46 Am. St. Rep. 92); to the requiring of foreign corporations to appoint a resident agent (Am. U. Tel. Co. v. Western Union Tel. Co., supra); to the regulation of traffic at and about depots, including the soliciting of patronage by cab drivers (Ex parte Bizzell, 112 Ala. 210, 21 South. 371); to the regulation of the sale of cotton seed (Davis v. State, 68 Ala. 63, 44 Am. Rep. 128); and of the sale of milk (Ridgeway v. City of Bessemer, 9 Ala. App. 470, 64 South. 189; Mayor & Aldermen v. Goldstein, 151 Ala. 473, 44 South. 113); to the prevention of stock running at large (Folmar v. Curtis, 86 Ala. 354, 5 South. 678); to the licensing of occupations generally (Van Hook v. City of Selma, 70 Ala. 363, 45 Am. Rep. 85; 2 Dillon on Mun. Corp. §§ 660, 731).

[1-3] Some of the foregoing authorities dealt with constructions of city ordinances regulating businesses that of necessity extended beyond the corporate limits, though not beyond the police jurisdiction of municipalities. See, also, 2 McQuillin, Mun. Corp., 657; 13 Am. & Eng. Ann. Cases, 137; 28 Cyc. 266, 703.

The Van Hook Case, supra, by Mr. Justice Somerville, involved the construction of an ordinance of the city of Selma requiring a license of all persons engaged in selling goods, wares, and merchandise, without the corporate limits of the city and within the limits of its police jurisdiction, and the ordinance was held to have been passed in valid exercise of the police power invested under the charter of that city. Appellant here insists that the authority of the city of Selma to license within its corporate limits and within its police jurisdiction was granted by the act of February 12, 1879 (Acts 1878–79, p. 454), and that like express authority is not contained in the charter of the city of Troy, nor in the general statutes having application to municipalities of the class to which Troy belongs by reason of its population. Code, §§ 1046–1460.

It is true that the charter of Selma, under which the ordinance construed and upheld in the Van Hook Case was adopted, contained the following provisions:

"The corporate authorities of the city of Selma shall have and exercise all the police powers and jurisdiction conferred by the charter of the city, outside of the corporate limits on the west to Valley creek, and north and east of the corporate limits over an area extending outward from the corporate limits one-half mile, and from Valley creek on the west to Beech creek on the southeast of said city; to arrest, try, and punish all persons guilty of violations of the ordinances and by-laws of said city; for the arrest, trial, and commitment of persons charged with violations of the laws of the state of Alabama; for regulating and licensing the sale of malt, vinous, and spirituous liquors, goods, wares, and merchandise; for regulating, licensing, and establishing markets and slaughterhouses; for the abatement of nuisances, and for regulating and licensing shows, theaters, and all exhibitions for amusement." Acts 1878–79, p. 454, § 1.

It is conceded that the original charter of the city of Troy contained no such provisions. However, the ordinance in question, of date December 27, 1916, was ordained pursuant and subject to the several provisions contained in the Municipal Code, having application. Code, § 1046 et seq. By statute the police power of the state is conferred on cities of the class to which the city of Troy belongs. Full power to adopt ordinances to the ends defined by the statute and "not inconsistent with the laws of the state, to carry into effect or discharge the powers and duties conferred by this chapter, and to provide for the safety, preserve the health, promote the prosperity, improve the morals, order, comfort, and convenience of the inhabitants of the municipality, and to enforce obedience to such ordinances," is the ample grant to such municipalities of the police power of the state. Code, § 1251; Borok v. City of Birmingham, 191 Ala. 75, 67 South. 389, Ann. Cas. 1916C, 1061; Herbert v. Demopolis, 197 Ala. 617, 73 South. 321.

It has been held that it is no objection to a municipal ordinance not in contravention of a state law that it affords additional regulation "complementary to the end state legislation would effect." Turner v. Town of Lineville, 2 Ala. App. 454, 56 South. 603; Borok v. City of Birmingham, supra. The extent of the police jurisdiction of cities of the class of Troy has been thus defined:

This power shall be extended to and "cover all adjoining territory within three miles of the corporate limits, and in cities having less than six thousand inhabitants, and in towns, such police jurisdiction shall extend also to the adjoining territory within a mile and a half of the corporate limits of such city or town. Ordinances of a city or town enforcing police or sanitary regulations and prescribing fines and penalties for violations thereof, shall have force and effect in the limits of the city or town and in the police jurisdiction thereof, and on any property or rights of way belonging to the city or town." Code of 1907, § 1230.

It will be observed that the exercise of the police power is thus extended to adjoining territory within one and a half and three miles, as the case may be, of the corporate limits, and to and over any property or rights of way belonging to the city, wherever situate, to the end that the municipality may "provide for the safety, preserve the health, promote the prosperity, improve the morals, order, comfort, and convenience of the inhabitants of the municipality." This manifold governmental end of the municipality is as clearly indicated in the foregoing statute as it was in the charter construed in Van Hook's Case.

That such manufacturing establishments sought to be regulated by the ordinance in question enjoy police protection maintained at the expense of the city of Troy, and that the inhabitants residing and being within the municipal limits and the police jurisdiction of the city, or within reasonable proximity to the plant in question, may need the reasonable protection of such ordinance, as it affects their safety, health, comfort, and convenience, cannot be gainsaid. And it is but reasonable that such manufacturing business should be made to bear its proportionate share of the burden of maintaining the police administration in that vicinity. Ordinances imposing a regulatory privilege tax on manufacturing plants, enacted under the police power to conserve the general substantial public welfare of the immediate community where they have application, and which are reasonably necessary to promote that end, will be held to have been adopted in the proper exercise of the police power for the purpose of regulation, and not for the purpose of taxation. 2 Dillon, Mun. Corp. (4th Ed.) 768; 2 Dillon, Mun. Corp. (5th Ed.) 665; 3 McQuillin, Mun. Corp. 2200, 2203, 2205; 28 Cyc. 744, 745.

The important distinction pointed out by the text-writers, and the one on which the foregoing decisions rest, is between the exercise of the power to license, merely as a reasonable police regulation, and its exercise for the purpose of raising revenue, and it is a test to be applied in determining the validity of municipal ordinances adopted for such governmental ends. North Hudson Railway Co. v. Hoboken, supra. This power to regulate may be expressed as well in ordinances imposing privilege taxes as in measures dealing with sanitation and nuisances or with the disposition, maintenance, and duties of the municipal constabulary, within the confines of the police jurisdiction. And as there can be no efficient enforcement of any character of police regulation without the incurring of a reasonable expense, the necessary outlay may be provided, in part at least, by a reasonable license imposed solely for such purpose. Van Hook v. Selma, supra; Davis v. Petrinovich, 112 Ala. 654, 21 South. 344, 36 L. R. A. 615; L. & N. R. R. Co. v. Baldwin, 85 Ala. 619, 5 South. 311, 7 L. R. A. 266; Ex parte Sikes, 102 Ala. 173, 15 South. 522, 24 L. R. A. 774.

Of this power Mr. Justice Sharpe says:

"As auxiliaries to the state government, municipalities have from time immemorial been accustomed to have and to exercise legislative

authority in matters properly pertaining to local government. The regulation of such matters may be shared in by or left wholly to the discretion of local lawmakers because they are presumed to have knowledge of local needs. The bestowal of such authority is not a delegation of the discretion which the Constitution either impliedly or expressly restricts to the general assembly, and therefore that body may grant or withhold the authority. The power to impose privilege taxes within reasonable limits is among those usual and necessary to be conferred both for defraying expenses of the local government and as a means of regulating the conduct of business, and is classed as a police power, even though it be not for protection against harmful occupations." Southern Express Co. v. Mayor and Aldermen of Tuscaloosa, 132 Ala. 326, 329, 330, 31 South. 460, 461. ·

Since both sides appear to find comfort in the Van Hook Case, it may be well to say that the learned circuit .judge trying this case, in his opinion, correctly pointed to the fact that in Van Hook's Case it was emphasized that the exercise of the police power of regulation by the imposition of a privilege tax was under general municipal police powers, rather than under the peculiar charter powers of the city of Selma.

In Ridgeway v. Bessemer, 9 Ala. App. 470, 64 South. 189, discussing privilege taxes, it was said that it made no difference that the dairyman lived and kept his cows outside of the corporate limits of the city, for by his sales he was doing business within the city and therefore was subject to such tax. The ordinance there considered enacted a schedule of licenses for the "various businesses, professions, or vocations carried on or engaged in in the city of Bessemer, Ala.," and imposed a privilege tax on the business of "dairying," of $1 for each cow, up to 20 cows, and 50 cents for each cow above the number of. 20. Thus the application of the police power, through regulation by license, was extended to affect cows kept at the home of the dairyman and beyond the corporate limits of the city. See, also, Mayor v. Goldstein, 151 Ala. 473,.44 South. 113.

The judgment of conviction under the second count of the complaint is supported by evidence showing that the city, in the adoption of the ordinance, was in the proper exercise of its police power.

[4-6] It is settled law that one who assails a statute or an ordinance on the ground that it is discriminatory and unreasonable has the burden of showing such to be the case. Denson v. Alabama Fuel & Iron Co., 73 South. 525, 530;[1] Briggs v. B. R. L. & P. Co., 188 Ala. 262, 66 South. 95. The appellant company has failed to discharge this burden by showing that there were other like manufacturing establishments located within the police jurisdiction of the city of Troy and without the city limits, with offices not maintained within the city limits but within the police jurisdiction of the municipality. The maintenance of police administration without the city, but within its police jurisdiction, as

affected by the existence and operation of such manufacturing plants, would not be affected by the fact that the owner or operating company did not maintain an office within the city for the sale of its products. In the absence of such proof, we cannot say that the ordinance here in question is unreasonable and discriminatory against such manufacturing companies with sales offices within the city limits, but with plants or manufacturing businesses maintained and operated without the city limits though within the police jurisdiction of the city.

In the case of City of Montgomery v. Kelly, 142 Ala. 552, 38 South. 67, 70 L. R. A. 209, the ordinance was declared void because the basis for the discrimination in license fees was the fact that trading stamps were given by some to their customers. This was merely a method of advertising, a feature in the conduct of business, and for such reason the ordinance was arbitrary and discriminatory against those conducting like businesses but not so advertising. The case of City of Montgomery v. Kelly condemned the tax there imposed because it was not a police tax, levied to regulate or afford police protection to the business taxed, but was an occupation license tax, and which discriminated against Kelly, as it did not apply to merchants of his general class, but only applied to those who issued trading stamps. It is true that there is an expression on page 556 of 142 Ala. of the opinion, 38 South. 67, 70 L. R. A. 209, which would indicate that a tax for police purposes could not be levied against useful lines. of trade and business, but this expression is in conflict with the case of Van Hook v. City of Selma, supra, 70 Ala. pages 364, 365, 45 Am. Rep. 85, wherein the true rule is set out as follows:

"We declare the true rule to be, in the case of useful trades and employments, and a fortiori in other cases, that, as an exercise of police power merely, the amount exacted for a license, though designed for regulation and not for revenue, is not to be confined to the expense of issuing it; but that a reasonable compensation may be charged for the additional expense of municipal supervision over the particular business or vocation, at the place where it is licensed. For this purpose the services .of officers may be required, and incidental expenses may be otherwise incurred in the faithful enforcement of such police inspection or superintendence. Ash v. People, 11 Mich. 347 [83 Am. Dec. 740]; Carter v. Dow, 16 Wis. 298; Tenney v. .Lenz, 16 Wis. 566; State v. Herod, 29 Iowa, 123 ; Cooley on Const. Lim. (4th Ed.) 245 [201], and note 1 on page 246, with cases cited ; Ex parte Marshall, 64 Ala. 266."

We therefore hold that the said Kelly Case must be qualified and overruled in so far as it conflicts with the above-quoted rule.

Under the agreed statement of facts, there is a practical, substantial reason for the different basis of privilege taxation, for police purposes only, in the case of manufacturing plants located without the city, but within its police jurisdiction, and maintaining sales offices within the city. And the fact that the

[1] 198 Ala. 383.

ordinance is directed to such manufacturing plants, so located, and so maintaining offices within the city for the sale of their products, in the absence of proof that there are like plants, similarly located, which do not maintain such offices within the city, leaves it free of the charge of being discriminatory and unreasonable.

The judgment of the circuit court is affirmed.

Affirmed. All the Justices concur.