30 So.2d 651

**ALABAMA GAS CO. v. CITY OF MONTGOMERY.**

**3 Div. 445.**

Supreme Court of Alabama.

Jan. 23, 1947.

Rehearing Denied June 12, 1947.

Hill, Hill, Whiting & Rives, of Montgomery, for appellant.

Walter J. Knabe, of Montgomery, for appellee.

LIVINGSTON, Justice.

The appeal is from a decree rendered by the Circuit Court of Montgomery County, in Equity, in a declaratory judgment proceeding. Sections 156 et seq., Title 7, Code of 1940.

No question is presented here as to the remedy, all parties desiring under the present procedure to have the merits of the case determined. The fact that no question here was raised as to the remedy of declaratory procedure distinguishes this case from that of L. W. Richardson & Co. v. Town of Hamilton, 248 Ala. 585, 28 So.2d 924, where the demurrer specifically took the point as to an adequate remedy at law.

The bill of complaint, filed by the Alabama Gas Company, a corporation, and hereinafter called the gas company, against the city of Montgomery, hereinafter called the city, has for its principal purpose the construction of section 745, Title 37, Code of 1940. That section provides that, "The maximum amount of privilege or license tax which the several municipalities within the state may annually assess and collect of persons, operating * * * gas companies (and certain other public utilities) * * * shall not exceed two percent of the gross receipts of the business of such persons, in the municipality for the preceding year."

Other questions relate to the validity and effect of certain city ordinances enacted by the city under its taxing authority.

There is little, if any, dispute about the facts in the case. The following statement is sufficient for an understanding of the conclusions here reached.

Since prior to 1942, the gas company has been engaged in the business of furnishing natural gas for heating, lighting and power to consumers within the city and also to a number of consumers outside the corporate limits, but within the police jurisdiction of the city. Throughout that period of time the gas company has been the only person, firm or corporation engaged in such business in the city or county of Montgomery, Alabama. One branch of the gas company's business consists of selling gas appliances and fixtures, operating a retail store for that purpose. When requested, the gas company installs pipes and appliances in the customers' houses and charges the customers as any other plumbing concern or gas fitter charges. From the meter into the consumer's home, it is optional with the consumer to use the services of the gas company or other independent contractors. The installation and servicing of pipes and appliances from the meter into the consumer's premises is treated as a part of the merchandising branch of the gas company's business, and the gas company pays to the city a license tax on that business regardless of whether it is done within or without the city limits. There is no dispute here concerning the license tax on this phase of the gas company's business.

As stated, the other phase of the gas company's business is the furnishing of natural gas to customers within the corporate limits of the city and to a number of customers without the corporate limits, but within the police jurisdiction of the city. All of the gas so furnished is purchased from the Southern Natural Gas Company, whose main pipe line from Texas and Louisiana runs north of the city of Montgomery. All of the gas sold to the gas company, and by it sold to its customers, comes into the gas company's pipe line through a meter station north of the city and beyond the city limits, but within the police jurisdiction. A part of the gas is piped directly to customers before reaching the city limits. The larger part of the gas is piped into the city through underground pipes and there delivered to the meters of its customers. Some of the gas is piped through parts of the city to meters of consumers outside of the city, but within the police

jurisdiction. The territory serviced by the gas company is confined to the city and its police jurisdiction. The actual sales and measuring of the gas occur at the meter of the consumer. Up to that point it belongs to the gas company and after it passes through the meter it is the consumer's gas. Gunter and Maxwell Fields, two large Army air fields, pay for the gas as a whole delivered to a central meter within the government reservations, rather than to individual consumers.

The gas company maintains an office in the city. The locale of its management is that office. Bills for gas furnished are sent out monthly from that office. Payments are made in person at the office or by checks mailed to the office, and the money is deposited in a Montgomery bank. All business with the gas company, including applications for gas, meter deposits, the making of contracts, is transacted at the gas company's office in the city, and all its records and books are kept there. The headquarters of the service and inspection departments of the gas company is located in the city, but in a building other than the building in which the gas company maintains its office.

The gas company has paid all license taxes claimed by the city for gas furnished for heating, lighting and power purposes to consumers within the corporate limits of the city, and no question is here presented concerning such taxes. It has paid no license tax for gas furnished for heating, lighting and power purposes to consumers without the corporate limits of the city, but within the police jurisdiction thereof. The authority to levy and collect such taxes, and the amount thereof, are questions for determination.

■■ It is well understood that municipal legislative power is delegated power derived from and part of the legislative power of the State. Mitchell v. City of Birmingham, 222 Ala. 389, 133 So. 13; Y. W. C. A. v. Gunter, 230 Ala. 521, 162 So. 120; Yeilding v. State ex rel. Wilkinson, 232 Ala. 292, 167 So. 580. And the power of a municipality to license business or occupation can be exercised only where it is plainly conferred by the State, either in express terms or by necessary implication. It will not be inferred from terms of uncertain import. 37 Corpus Juris page 178, section 18; 38 Am.Jur. page 17, section 325; City of Mobile v. Gentry, 170 Ala. 234, 54 So. 488; City of Mobile v. Richards, 98 Ala. 594, 12 So. 793; Van Hook v. Selma, 70 Ala. 361, 45 Am.Rep. 85; Nashville, C. & St. L. R. Co. v. Attalla, 118 Ala. 362, 24 So. 450.

The following statutes are controlling here:

Section 735, Title 37, Code. "All municipalities shall have the power to license any exhibition, trade, business, vocation, occupation, or profession not prohibited by the constitution or laws of the state, which may be engaged in or carried on in the city or town; to fix the amount of licenses, the time for which they are to run not exceeding one year, and provide a penalty for doing business without a license, and to charge a fee of not exceeding fifty cents for issuing each license; to require sworn statements as to the amount of capital invested, or value of goods or stocks, or amounts of sales or receipts where the amount of the license is made to depend upon the amount of capital invested, or value of goods or stocks or amount of sales or receipts, and to punish any person or corporation for failure or refusal to furnish sworn statements or for giving of false statements in relation thereto. The license herein authorized as to persons, firms or corporations engaged in business in connection with interstate commerce, shall be confined to that portion within the limits of the state, and where such person, firm or corporation has an office or transacts business in the city or town imposing the license. The power to license conferred by this article may be used in the exercise of the police power as well as for the purpose of raising revenue, one or both."

Section 745, Title 37, Code. "The maximum amount of privilege or license tax which the several municipalities within the state may annually assess and collect of persons operating (electric, hydro-electric) street railroad, electric light and power companies, gas companies, water works companies, pipe line companies for transporting or carrying gas, oil, gasoline, water

or other commodities, gas distributing companies whether by means of pipe lines or by tanks, drums, tubes, cylinders, or otherwise, heating companies or other public utility, incorporated under the laws of this state, or any other state, or whether incorporated at all or not, except telephone and telegraph companies, railroad and sleeping car companies, and express companies which are otherwise licensed shall not exceed two percent of the gross receipts of the business of such persons, in the municipality for the preceding year. Provided that this shall not affect any existing contract between any municipality and any public utility operating therein."

Section 733, Title 37, Code (Pocket Part). "Any city or town within the State of Alabama may fix and collect licenses for any business, trade or profession done within the police jurisdiction of such city or town but outside the corporate limits thereof; provided, however, that the amount of such licenses shall not be more than one-half the amount charged and collected as a license for like business, trade or profession done within the corporate limits of such city or town, fees and penalties excluded. Provided, further, that when the place at which any such business, trade or profession is done or carried on within the police jurisdiction of two or more municipalities which levy the licenses thereon authorized by this section, such licenses paid to and collected by that municipality only whose boundary measured to the nearest point thereof is closest to such business, trade or profession. *Provided that this section shall not have the effect to repeal or modify the limitations in this article relating to railroad, express companies, sleeping car companies, telegraph companies, telephone companies and public utilities, and insurance companies and their agents."* (Italics ours.)

Section 455, Title 37, Code. "Municipal corporations may, from time to time, adopt ordinances and resolutions not inconsistent with the laws of the state, to carry into effect or discharge the powers and duties conferred by this title, and provide for the safety, preserve the health, promote the prosperity, improve the morals, order, comfort, and convenience of the inhabitants of the municipality, and enforce obedience to such ordinances by fine not exceeding one hundred dollars, and by imprisonment or hard labor not exceeding six months, one or both."

It is earnestly insisted on the part of the gas company that the limitation contained in section 745, supra, prescribing that the maximum amount of license tax which can be levied against gas companies "shall not exceed two percent of the gross receipts of the business of such persons, *in the municipality,*" means that the maximum shall not exceed two percent of the gross receipts from customers or consumers of the service of the utility within the municipality (italics ours); that the proviso contained in section 733, supra, and which we have italicized, preserves intact the limitations contained in section 745, supra.

On the other hand, the city insists that all the gas sold by the gas company, both within the city limits and without the city limits, but within the police jurisdiction, is subject to a two percent tax; that all of it constitutes gross receipts from business "in the municipality," within the holding of our cases, principally Standard Oil Co. v. Selma, 216 Ala. 108, 112 So. 532; Guntersville v. Wright, 223 Ala. 349, 135 So. 634; Decatur v. Poole, 238 Ala. 224, 189 So. 743.

Neither solution is correct. This Court in Standard Chemical & Oil Co. v. Troy, 201 Ala. 89, 77 So. 388, L.R.A.1918C, 522, held that a municipality could levy a license tax under its police power on a manufacturing plant located beyond the territorial limits of the city, but within its police jurisdiction. Its power to do so was authorized by section 1251, Code of 1907. That section is now section 455, Title 37, Code of 1940, quoted above. No doubt section 2173, Code of 1923 (General Acts 1919, page 1030) prohibiting the levy of a license tax on any business, etc., the conduct or operation of which was wholly outside the corporate limits of the municipality, was enacted for the purpose of neutralizing the decision in the Troy case, supra. But section 2173, supra, was not carried into the Code of 1940. So that, the power granted in section 455, supra, now stands unimpaired, except that a license tax for a business conducted outside the city, but within the police jurisdiction cannot exceed one-

half the amount charged by a like business done within the city (section 733, supra), and is the same power contained in section 1251, Code of 1907, the Code section in force and effect when the Troy case was decided. So far as the power of a municipality to levy a license tax on a business conducted outside the city limits, but within the police jurisdiction, is concerned, section 733, supra, added nothing to existing authority. That power is granted by section 455, supra, and which was in force when section 733, supra, was enacted. Section 733, supra, does limit the amount which can be assessed to not more than one-half the amount charged and collected as a license for like business, trade, etc., done within the corporate limits, fees and penalties excluded. Section 733, supra, carries the other and further proviso, "Provided that this section shall not have the effect to repeal or modify the limitations *in this article* relating to railroads, * * * and public utilities." (We interpolate gas companies.) It will be noted that the foregoing proviso refers to article 3 of Chapter 15, Title 37, Code. It does not refer to section 455, supra. But the authority granted in section 455, supra, was already limited. It is limited to an amount reasonably necessary for the protection of the lives, health and property of the citizens, the maintenance of good order and quiet of the community, and the preservation of public morals. Van Hook v. City of Selma, 70 Ala. 361, 45 Am.Rep. 85; Standard Chemical & Oil Co. v. Troy, supra; Decatur v. Poole, supra.

In Alabama Power Co. v. City of Carbon Hill, 234 Ala. 489, 175 So. 289, 292, it was said:

"We declare the true rule to be, in the case of useful trades and employments, and a fortiori in other cases, that, as an exercise of police power merely, the amount exacted for a license, though designed for regulation and not for revenue, is not to be confined to the expense of issuing it; but that a reasonable compensation may be charged for the additional expense of municipal supervision over the particular business or vocation, at the place where it is licensed. For this purpose, the services of officers may be required, and incidental expenses may be otherwise incurred in the faithful enforcement of such police inspection or superintendence. Ash v. People, 11 Mich. 347, 83 Am.Dec. 740; Carter v. Dow, 16 Wis. 298; Tenney v. Lenz, 16 Wis. 566; State v. Herod, 29 Iowa 123; Cooley on Const.Lim. (4th Ed.) 245 [246] (201), and note 1 on p. 246, with cases cited; Ex parte Marshall, 64 Ala. 266."

The amount may be, therefore, in such sum as may be reasonably necessary (not to exceed one-half of the amount charged and collected as a license for like business done within the corporate limits, section 733, supra), to promote the objects in the districts where the ordinance imposing it is designed to operate, in the exercise of the police power, but not for revenue.

We think it clear, then, that the maximum limitation of two per cent contained in section 745, supra, and preserved intact in the proviso in section 733, supra, was intended by the legislature to control municipal action in assessing license taxes on businesses, trades, etc., conducted or operated within the city limits. That it was not intended to prevent the municipality from assessing and collecting an additional tax under the police power on business conducted or operated without the city limits, but within the police jurisdiction. Section 455, supra.

The construction contended for by the gas company is, in effect, that the legislature intended that section 745, supra, should modify, limit or restrict section 455, supra. We do not think such was the intent, nor the result.

The license schedule of the city makes provision for license tax on the gas company under one ordinance through the calendar years of 1942, 1943 and 1944, and under another ordinance beginning with 1945. The earlier ordinance prescribed a schedule of licenses for businesses "carried on in the city of Montgomery." Schedule 195 is as follows: "Gas companies, furnishing manufactured or natural gas for heating, lighting and power, on gross business of $125,000.00 and less, $2500.00, and in addition thereto two percent on gross business in excess of $125,000.00."

Another section of said ordinance, section 16, applying to all businesses generally,

prescribed a license for engaging in such business "outside the corporate limits of the city of Montgomery, but within the police jurisdiction thereof," in an amount equal to one-half the license tax for engaging in such business within the corporate limits of the city, avowedly "for police and fire protection only, and not for revenue."

Under the foregoing ordinance the city insists that all the gas sold by the gas company, both within and without the city limits, but within the police jurisdiction, is subject to a two percent tax. The trial court so held, and entered a decree against the gas company on that basis, and covering the years 1942, 1943 and 1944. That decree cannot be sustained. The situation here is distinguishable from one where the licensee has a plant within the city limits where his product is stored and it is withdrawn from such storage and distributed either within the city, its police jurisdiction, or elsewhere. The business of storing and withdrawing from storage is subject to a license fixed upon the value of the product so withdrawn, regardless of what may be done with it thereafter. Under these circumstances, customers within the police jurisdiction do not put the licensee in the position of doing business to that extent in the police jurisdiction as contemplated by sections 455 and 733, supra. Cases holding, and which we have cited above, that the power exists in the city thus to fix a license fee in accordance with such value are not controlling here. For the same situation does not here obtain. The licensee has no storage plant, does not withdraw anything from storage, but receives the gas from its meter, and from that meter it is distributed throughout the territory and sold at meters both within and without the city, and within the police jurisdiction. The business thus done can be accurately measured as to what is done within the city, and without the city, but in the police jurisdiction.

In transacting business of that kind, it cannot be said that all the business of the licensee is conducted in the city merely because its principal office and accounts are kept there. The licensee is doing business within the police jurisdiction as well as one within the corporate limits. They are separable although they are served through connecting pipe lines. That was evidently the theory on which the case of Alabama Power Co. v. City of Carbon Hill, supra, was decided. This in no wise conflicts with the generally accepted principle that the power to impose a license upon a business does not authorize a division of the business into its constituent elements, parts or incidents, and the levy of a separate tax on each element, part or incident thereof.

Section 733, Title 37, supra, recognizes the fact that a licensee may do business within the corporate limits, and also within the police jurisdiction, and the amount of the license fee is different and based on different theories. The Troy case, supra, decided under what is now section 455, supra, recognizes the same facts and theories.

The other section of the earlier ordinance referred to above, section 16, applies to all businesses generally, and prescribes a license for engaging in such business "outside the corporate limits of the city of Montgomery, but within the police jurisdiction thereof" in an amount equal to one-half the license tax, to which he, she or it would be subject, were such business then engaged in or carried on within the corporate limits of the city, avowedly "for police and fire protection only, and not for revenue."

The decision in the case of Alabama Power Co. v. City of Carbon Hill, supra, is clearly applicable and controlling here. It was there said:

"When a city fixes the amount of a license charge for business conducted within its limits, it may include in a single sum an amount for revenue and an additional sum for police regulation. When the charge is made upon some useful occupation, business or profession beneficial to the community, it is ordinarily said to be a revenue measure. 'But where a money payment is exacted for the privilege of pursuing occupations, looked upon as more or less injurious to society or which require careful police supervision (as the liquor traffic, theaters, dance

houses, certain kinds of amusements, as circuses and the like) or trades which may become detrimental to health or become public nuisances (as slaughter houses, bone and rendering factories, garbage reduction plants, stone quarries, dairies and cow stables, laundries, wash houses, and dying establishments) this is usually designated a license tax levied by virtue of the police power.' 3 McQuillan on Municipal Corporations, page 462, section 1091 (991).

"We doubt not, however, that the license fee charge to the latter may also include an amount added for revenue. And in case of the useful and harmless occupations an amount may be added for police supervision, such as the nature of the business requires. Van Hook v. City of Selma, supra (70 Ala. 361, 45 Am.Rep. 85); McLendon v. Kerr, 210 Ala. 110, 97 So. 145.

"But when the power of a city is limited to a charge for police regulation, for it to fix a flat rate of one-half the sum charged that occupation in the city when it is useful, and not harmful, business, and taxed primarily for revenue, would be to make the charge on a basis which includes revenue in violation of its authority. If the city is dealing with a business which is reasonably classed as inherently or potentially injurious to the sanitation, health, peace, and comfort of the inhabitants or conditions in it, and imposes a license charge for doing business in the city, primarily predicated on the ground that it is a police measure and reasonable when so considered, it may not be improper to fix as a charge on such a business in the police jurisdiction an amount reasonably proportionate to the charge on such a business in the city.

"The police jurisdiction is usually not as populous as the city proper, and the same sort of business may not need as much supervision. *But when a city is exercising a right to tax only for the police supervision of a class of business, that sort of business must be classified in accordance with its merit rating in respect to the necessity for police supervision.* (Italics ours.) When such is the basis on which the power must be exercised, it is not due process to predicate it on some other basis. Railroad

Retirement Board v. Alton R. Co., 295 U.S. 330, 55 S.Ct. 758, 79 L.Ed. 1468; Mountain Timber Co. v. Washington, 243 U.S. 219, 37 S.Ct. 260, 61 L.Ed. 685, Ann.Cas.1917D, 642. The requirement for a rating on its tendency to police need does not exist when the exaction is for revenue. And when it is a revenue exaction the power of the courts is much more restricted. Williams v. Talladega, 164 Ala. 633, 51 So. 330; Troy v. Western Union Tel. Co., 164 Ala. 482, 51 So. 523, 27 L.R.A.,N.S., 627; 13 Alabama Digest, Licenses, page 705, ⊛ 7 (9); Van Hook v. City of Selma, supra.

"It may be that an electric utility has some tendency toward a need for police supervision, though the agreed facts show that it has never called into use such power in respect to this situation. But assuming that to be true, it is certainly not on a parity with the power to tax it for revenue. If the 2 per cent. charge in a city has any relation whatever to police supervision, it cannot with any reasonable analysis be said to be responsible for half of the charge. But if it were, then there would be as much charge for supervision without as within the city, which is contrary to the spirit of the authority conferred, since the amount of the charge for police supervision is effected by the populousness of the community. Van Hook v. City of Selma, supra.

"But all other questions aside, the amount of the tax as a police measure may be so much out of proportion to what is reasonable in relation to appellant's business, as to show that it is a subterfuge to raise revenue."

▮ Presumably section 16, supra, was passed in the valid exercise of the police power and not as a source of revenue, and the action of the municipal body in fixing the amount of the fee will not be disturbed by the court unless it appears there was manifest abuse of that power. City of Andalusia v. Fletcher, 240 Ala. 110, 198 So. 64.

▮ But in the instant case, the trial court made no finding whatever on the question of whether a charge of one-half of two percent on business done in the po-

lice jurisdiction exceeds the city's authority under the police power so as to contain, in part, a revenue measure. We will not do so here because the facts sufficient for such a finding have not been developed.

During the pertinent period of time covered by section 16, supra, approximately eighty percent of the gas sold by the gas company outside the city limits was sold within the area of Maxwell Field and Gunter Field. The facts relative to the city's jurisdiction over these areas was not developed. We call attention to our case of State v. Blair, 238 Ala. 377, 191 So. 237, and to section 19, Title 59, Code of 1940.

The ordinance which became effective on January 1, 1945, is as follows:

"To levy a license or privilege tax for the privilege of furnishing manufactured or neutral gas within the city of Montgomery and its police jurisdiction, and to provide penalties for the violation of said ordinance.

"Section 1. There is hereby levied on each person, firm or corporation which furnished manufactured or natural gas for heating, lighting, power purposes, or any other purpose, an annual license or privilege tax of a sum equal to two percent (2%) of the gross receipts for business transacted by such person, firm or corporation in the city of Montgomery for the preceding year from the sale of manufactured or natural gas sold or distributed from any point or points in the city of Montgomery by such person, firm or corporation for any purpose whatsoever."

What we have already said demonstrates that the business of the gas company as now conducted must be considered separable. A business within the city limits, and a business without the city, but within the police jurisdiction. It is therefore manifest that the last quoted ordinance cannot be construed to cover sales, as now conducted, made outside the city, but within the police jurisdiction.

The cause is reversed and remanded.

Reversed and remanded.

All the Justices concur.