30 So.2d 659

## HAWKINS v. CITY OF PRICHARD.

### I Div. 282.

Supreme Court of Alabama.

May 29, 1947.

Wm. G. Caffey and Jack C. Gallalce, both of Mobile, for appellant.

236

Geo. E. Stone and Thos. A. Johnston, III, both of Mobile, for appellee.

FOSTER, Justice.

This suit is for the refund of license money paid as a gasoline filling service station operator in the police jurisdiction of Prichard. It is for money had and received, which is the appropriate remedy. City of Prichard v. Richardson, 245 Ala. 365, 17 So.2d 451. The suit is authorized by section 332, title 51, Code, although such payment was not made under compulsion or protest. The claim is for money paid in the period from May 1, 1942 through April 1944 at the rate of one cent per gallon sold as follows:

| | |
|---|---:|
| May 1942 through December | $ 744.54 |
| For year 1943 | 1266.45 |
| January through April 1944 | 509.91 |
| | 2520.90 |

The record shows the following statistical facts:

*For all service stations—license collected in and out of the city for 1942–1943, as follows:*

| | |
|---|---:|
| For entire fiscal year Oct. 1, 1942 to Sept. 30, 1943 | $40,439.59 |
| Within city Jan. 1, to Dec. 31, 1942 | 18,074.56 |
| In police jurisdiction | 22,365.03 |

*Average per month:*

| | |
|---|---:|
| Within city | $1506.21 |
| In police jurisdiction | 1863.75 |
| Combined | 3369.96 |

*Number of service stations 1942:*

| | |
|---|---:|
| In city (19) into 1506.21 | $ 79.27 each |
| In police jurisdiction (27) into 1863.75 | 69.00 each |
| Combined | 148.27 |

*October 1, 1943 to September 30, 1944. Receipts from license on all filling stations in and out of city:*

| | |
|---|---:|
| For fiscal year—total | $37,901.50 |
| Within city | 14,375.77 |
| Police jurisdiction | 23,525.73 |

*Average per month:*

| | |
|---|---:|
| Within city | $1197.90 } per month. |
| Police jurisdiction | 1960.47 } |
| Combined | 3158.37 |

*Number of service stations 1943.*

| | |
|---|---:|
| Within city (18) into 1197.90 | 66.55 each |
| Police jurisdiction (29) into 1960.47 | 67.60 each |
| Combined | 134.15 |

In some instances above, the calendar year is used, and in others the fiscal year,

because the figures do not seem to be available. But we assume that the average is substantially the same.

So that for the year 1942 each filling station in the police jurisdiction was paying as a license to the city an average of about ten dollars less than each such station within the city. And for 1943 each in the police jurisdiction was paying approximately the same as each such station in the city. Whereas the rate per gallon was twice as much in the city as without.

[2] There was no separate account made as to the cost of police and fire protection in the police jurisdiction, and no allocation of such expense to that territory. For such service, including both the city proper and the police jurisdiction, for 1942-1943, it was $33,919.24; whereas the total amount collected from filling station licenses, as we have stated, was $40,434.59.*

The cost for the police and fire departments for the year 1943-1944 was $41,975.35.

The license tax collected from all filling stations was $37,901.50.

The amount supplied from other sources $4,073.85.

So that the question is to determine the reasonable proportionate amount of the cost of operating the fire and police departments, including the value of the proportionate use of the standby facilities, which should be charged to the cost of supervising the filling stations located and doing business in the police jurisdiction of the city, but not within the city. There is no other cost of supervision claimed by the city to be chargeable.

For 1942-1943, we find each such filling station paying on the average of $69 per month, and the total number of them in the police jurisdiction was twenty-seven, so that they paid monthly $1863.66, whereas the total monthly cost of both departments was $3369.87. So that more than one-half of such cost was paid by outside filling stations.

And for 1943-1944 each such filling station paid on the average $67.60 per month, and the total number of them in the police jurisdiction was twenty-nine, so that they paid monthly $1960.47, whereas the total monthly cost of both departments was $3158.37. So that more than one-half of such cost was paid by outside filling stations.

■ True, in making a license tax dependent upon volume of sales made during the tax year, the taxing power cannot accurately determine at the time the tax is laid what amount of revenue it will return. But they cannot let that justify levying a tax when the result shows it to be in excess of their authority when past experience has demonstrated what the yield will probably be with reasonable accuracy so far as here material.

The experience of the city in respect to the result of the license here in question does that very thing, as shown by the figures submitted. So that those figures are pertinent to the inquiry.

The evidence does not disclose the population of the police jurisdiction, nor its relative population compared to that in the city which has six thousand.

To repeat:

| | | |
|---|---|---|
| The total cost of the fire and police departments for the year 1942–1943 | $33,919.24 | |
| The total license collected on filling stations | 40,439.59 | |
| Total cost fire and police departments for 1943–1944 | 41,975.35 | |
| Total license collected from filling stations | 37,901.50 | |

Combining the two years:

| | | |
|---|---|---|
| Cost for 1942–1943 | $33,919.24 | |
| Cost for 1943–1944 | 41,975.35 | |
| | 75,894.59 | 75,894.59 |

* Footnote: The income from fines and costs was $38,723.29, or an overpayment by $4,804.75. But such fines go into the general fund as do the license money, and the police and fire departments are paid out of the general fund. In counting the cost of the police and fire departments, deduction should not be made for the fines collected. Those departments are not paid from a special fund consisting of fines and forfeitures. Fines should be treated as any other contribution to the general fund.

238

Collected from all filling stations:
1942–1943        40,439.59
1943–1944        37,901.50
                 ——————
Collected from all    78,341.09    78,341.09.
filling stations

So that the revenue from licenses on filling·stations paid the entire cost of the fire and police departments for those years, when combined, with some over for other purposes.

The principles of law controlling on this appeal have been fully settled in our cases beginning with the leading case of Van-Hook v. City of Selma, 70 Ala. 361, 45 Am. Rep. 85, and others may be cited as follows: City of Andalusia v. Fletcher, 240 Ala. 110, 198 So. 64; Alabama Power Co. v. City of Carbon·Hill, 234 Ala. 489, 175 So. 289; City of Prichard v. Richardson, 245 Ala. 365, 17 So.2d 451; Alabama Gas Co. v. City of Montgomery, post, p. 257, 30 So.2d 651.

The effect of those cases simply stated is that cities are not authorized under the Constitution to levy a license tax on business located wholly within its police jurisdiction and outside the city limits for the purpose of raising general revenue either directly or indirectly; but in levying such an assessment, the amount must be so fixed as to reflect reasonable compensation for the expense of municipal supervision over the particular business or vocation at the place where it is licensed. Van-Hook·v. City of Selma, supra.

The supervision here referred to properly includes services of the police and fire departments, including standby facilities, sanitary inspectors, and such other employees as may be necessary to see that reasonable requirements are observed with respect to disorders, fires, sanitation, and safety in other respects, of each such business in its relation to all of the businesses within such territory.

But the action of the municipality in fixing an amount which appears to be a fee for such purposes will not be disturbed by the courts unless it is manifest that it was not based upon a proper consideration of the power and duty which the city owes under such circumstances, but is intended as·a subterfuge to raise revenue on a broad basis, and the courts will not scrutinize the amount of the license fee too narrowly when it can be reasonably found to be predicated upon a sincere effort on the part of the city authorities to fix the fee on a basis which is justified under the Constitution.

It is also here important to note that "when the unreasonableness vel non of an ordinance or by-law is asserted or urged, the question thus made is to be decided by the court, not by the jury." City of Andalusia v. Fletcher, supra [240 Ala. 110, 198 So. 66]; Briggs v. Birmingham Ry., Light & Power Co., 188 Ala. 262, 66 So. 95; City of Birmingham v. Louisville & N.R. Co., 216 Ala. 178, 112 So. 742.

Filling stations *in the city* are subject .to a license fee to cover general purposes as well as for fire and police protection which is included in supervision. Those not *in the city,* but in *the police jurisdiction,* as we have said, are subject to license in an amount necessary to cover their supervision, including fire and police service; but not for general revenue.

We do not know what other businesses are in the police jurisdiction which were subject to a license, or paid such a license.

The question is not controlled by the number of calls for the services, though the evidence is that the calls for the fire department were twice as many as those in the city, and about equal to the number of calls for the police. It does not appear to what extent filling stations were responsible for those calls.

Cities in fixing their schedule of licenses should anticipate the amount to be needed for police, fire and sanitation, and other supervision, including use of its facilities, both within the city and in the police jurisdiction. And then allocate a reasonable amount of that for the police jurisdiction. And estimate the proper proportionate amount of that which should be chargeable to the various businesses there subject to a license tax by the city, so that each such business then licensed shall as near as possible pay an amount properly chargeable to its supervision and police

protection, all of them together approximately covering the amount of the expense of the city for such purposes properly allocated to the police jurisdiction. But a proper charge to the *filling stations* situated in the police jurisdiction, regardless of other subjects of license in that jurisdiction could hardly be said to be as much or more than one-half of the total cost of maintaining the police and fire departments, both within and without the city limits having a population of six thousand. It is for supervising their own business which they must pay, in the form of a license.

The mayor of the city testified that they were collecting from these people outside of the city limits money for use of the general welfare of everybody. This frankly admits plaintiff's contention.

When a city has gone about its assessment of license fees against business done in the police jurisdiction in some such manner as indicated above, exactitude of estimates to facts later developed will not be required. But it must appear that a reasonable effort was made to base such fees upon the reasonable cost of supervision, including necessary stand-by equipment and resources. And when it appears that no such effort was made, but that an arbitrary figure was fixed for such licenses which, when properly considered, largely exceeds the reasonable cost of supervision of such business, it is apparent that the purpose is to raise revenue and not to supervise. Cities should by this time have learned that they cannot license for general revenue purposes businesses maintained solely in the territory of their police jurisdiction outside the city limits. Section 733, title 37 (pocket part), Code, does not confer on cities a right to assess licenses for such business equal in all instances to one-half the amount charged and collected as a license for like business within the corporate limits of the city. But that is the ceiling over which they cannot go. But under that ceiling the Constitution declares in effect that it must not exceed a reasonable sum as a charge for the supervision of that business.

In City of Prichard v. Richardson, supra, this Court was in part dealing with the same ordinance, and also a previous one fixing the license at one-half cent per gallon. We affirmed a finding by the trial court for the plaintiff on evidence not more beneficial to plaintiff than that here shown. That holding amply supports our conclusion in this case.

The trial court submitted to the jury the question "whether or not the amount of license tax imposed by this ordinance is more, is an amount greater, is reasonably greater than the amount reasonably necessary to regulate the businesses in the area, and to furnish the necessary police and fire protection; in event the jury is satisfied from the evidence, and the burden is on the plaintiff to so satisfy you, that the amount of the license imposed by the ordinance is unreasonably more than the amount reasonably necessary to regulate and furnish these services, why then the ordinance is unconstitutional."

The court overruled a motion for a new trial. The record fairly shows an exception to that feature of the oral charge and to the action of the court in overruling the motion for a new trial.

As we have stated, the court itself should have decided the question of whether the ordinance was reasonable as applied to plaintiff without submitting that question to the jury. The court should have charged the jury affirmatively for plaintiff as requested in the unnumbered charge on page thirty-eight of the record, assignment of error No. 5. On such a trial where a jury is demanded, it should give the charge either for plaintiff or defendant, if requested.

The charge should have been given for plaintiff, and it was error to submit to the jury a question of law which the judge should decide. The motion for a new trial should have been granted.

A demand was made by defendant for a trial by jury. But in such a case as this the only necessity for a verdict is to assess the damages for plaintiff when the court finds that the ordinance is unreasonable and void as to plaintiff. We cannot render a judgment here, but can only reverse and remand for another trial.

Reversed and remanded.

GARDNER, C. J., and LAWSON and STAKELY, JJ., concur.