541 So.2d 524 (1988)
Ex parte State of Alabama.
(Re STATE DEPARTMENT OF REVENUE
v.
REYNOLDS METALS COMPANY).
87-728.
Supreme Court of Alabama.
November 18, 1988.
Rehearing Denied January 13, 1989.
*525 Don Siegelman, Atty. Gen., and B. Frank Loeb, Chief Counsel, and Ron Bowden, Asst. Counsel, Dept. of Revenue, and Asst. Attys. Gen., for petitioner.
Bruce A. Rawls and David D. Dowd III of Burr & Forman, Birmingham, for respondent.
HOUSTON, Justice.
The State of Alabama, Department of Revenue, appealed to the Court of Civil Appeals from a summary judgment granted to Reynolds Metals Company in the Circuit Court of Montgomery County, Alabama. The Court of Civil Appeals affirmed the judgment, 541 So.2d 523, and, thereafter, overruled the State's application for rehearing. The State then petitioned this Court for a writ of certiorari, which we issued to address the following question: Whether a levy of a license tax based upon gross receipts in the police jurisdiction is a valid levy even though the city is unable to relate the taxes levied upon a particular business within the police jurisdiction to the costs of city supervision and services rendered to that particular business. This Court answered that question "no" by a 5-4 vote in Ex parte City of Leeds, 473 So.2d 1060 (Ala.1985), affirming, Continental Electric Co. v. City of Leeds, 473 So.2d 1056 (Ala.Civ.App.1984). We conclude that Ex parte City of Leeds answered that question incorrectly; because that case was followed in the present case, the wrong standard was applied, and we must reverse and remand.

FACTS
Reynolds Metals Company, a Delaware corporation authorized to do business in the State of Alabama, has owned and operated facilities in Colbert County, Alabama, since 1941. Reynolds reclaims and manufactures aluminum and related products in facilities located outside the corporate limits, but within the police jurisdiction, of the City of Muscle Shoals.
Reynolds appealed to the Circuit Court of Montgomery County from final tax assessments imposed by the Department of Revenue on behalf of the City of Muscle Shoals. The final assessments were based on Reynolds's operations at its Colbert County facilities during the 19-month period beginning June 1, 1980, and ending December 31, 1981. These assessments were made under Muscle Shoals Ordinance No. 1011, which was adopted by the Muscle Shoals Board of Commission in 1980. Ordinance No. 1011 imposed a "privilege" or "license" tax on persons conducting business within the Muscle Shoals corporate limits and on persons conducting business outside the corporate limits but within the city's police jurisdiction.
The circuit court granted summary judgment for Reynolds, on the authority of Ex parte City of Leeds, supra, and set aside the tax assessments. The Court of Civil *526 Appeals affirmed, also based upon Ex parte City of Leeds.
In Ex parte City of Leeds, this Court affirmed the judgment of the Court of Civil Appeals, which had held that the trial court erred in holding valid a business license schedule imposed on a business outside the corporate limits but within the police jurisdiction where the city had failed to reasonably relate the amount of the license tax imposed on the particular business to the services rendered to that business.
In response to our Ex parte City of Leeds decision, the Legislature amended Code 1975, § 11-51-91,[1] effective April 29, 1986. Even though this amendment was not in effect at the time of the assessment made in the case before us, our decision in this case will affect the validity of that amendment, for the amendment provides that "no calculation is required to be made by the municipal officials for the cost of services to any particular business or classification of businesses within the police jurisdiction so long as the total amount of such licenses collected in the police jurisdiction shall not be in an amount greater than the cost of services provided by the city or town to the police jurisdiction." An analysis of this Court's prior decisions shows that it was not a construction of legislative intention, but a finding of a lack of legislative power, that led to the majority decision in Ex parte City of Leeds. That was a 5-4 decision. This opinion will affect not only Reynolds Metals and the City of Muscle Shoals, but all cities and towns and all businesses located within the police jurisdiction, but not within the corporate limits, of cities and towns, before and after the amendment to § 11-51-91 that became effective on April 29, 1986.
Justice Shores, in Jackson v. City of Florence, 294 Ala. 592, 598, 320 So.2d 68, 73 (1975), wrote:
"As strongly as we believe in the stability of the law, we also recognize that there is merit, if not honor, in admitting prior mistakes and correcting them."
In that spirit, we must revisit Ex parte City of Leeds.

We start with the premise that the power of the Legislature, except as restrained by the Federal or State Constitution, is supreme in the enactment of statutory law and in the creation of subordinate governmental agencies, and in prescribing their powers and duties. State ex rel. Brooks v. Gullatt, 210 Ala. 452, 98 So. 373 (1923).
The Legislature prescribed municipalities' powers and duties by the enactment of what is now Code 1975, § 11-45-1:
"Municipal corporations may from time to time adopt ordinances and resolutions not inconsistent with the laws of the state to carry into effect or discharge the powers and duties conferred by the applicable provisions of this title and any other applicable provisions of law and to provide for the safety, preserve the health, promote the prosperity and improve the morals, order, comfort and convenience of the inhabitants of the municipality, and may enforce obedience to such ordinances."
The Legislature may authorize a municipal corporation, under the police power, to regulate and license businesses carried on within its corporate limits and within a prescribed, reasonable limit outside of its *527 corporate limits, and to require the payment of such a sum for a license as is reasonably necessary for the protection of the lives, health, and property of the residents of this area, the maintenance of good order and quiet in this area, and the preservation of public morals in this area. Van Hook v. City of Selma, 70 Ala. 361, 45 Am.Rep. 85 (1881); Standard Chemical & Oil Co. v. City of Troy, 201 Ala. 89, 77 So. 383 (1917).
The Legislature, by the enactment of what is now Code 1975, § 11-40-10, provided:
"The police jurisdiction in cities having 6,000 or more inhabitants shall cover all adjoining territory within three miles of the corporate limits, and in cities having less than 6,000 inhabitants and in towns, such police jurisdiction shall extend also to the adjoining territory within a mile and a half of the corporate limits of such city or town.
"Ordinances of a city or town enforcing police[2]or sanitary regulations ... shall have force and effect in the limits of the city or town and in the police jurisdiction thereof `and on any property or rights-of-way belonging to the city or town." (Emphasis supplied.)
Our research does not reveal that there was any general legislation dealing with police jurisdictions or licensing businesses located therein, in 1881, when Van Hook v. City of Selma, supra, was decided.
In 1879, the charter of Selma was amended by the Legislature to allow Selma to have and exercise within a specified territory, adjoining and outside of the city limits, all the police powers and jurisdiction conferred by the charter of the city. An ordinance was passed requiring a license fee of $10.00 to be paid by all persons selling goods, wares, and merchandise outside the city limits but within this "police jurisdiction." Van Hook refused to pay the license fee, was convicted of violation of this ordinance, and was fined $10.00. Upon appeal to the circuit court, his conviction was affirmed; he appealed to this Court. The question before this Court was the validity of the ordinance exacting this license fee. It was upheld.
This Court held that Selma was granted the right to regulate and license for police purposes merely; that police power had been held to embrace the protection of the lives, health, and property of the citizens, and the maintenance of good order and quiet of the community and the preservation of public morals; and that a "license for regulation, therefore, in such sum as may be reasonably necessary to promote these objects, in the district where the ordinance imposing it is designed to operate, may be construed to be the exercise of the police power, and not of the power of taxation." 70 Ala. at 363-64. (Emphasis supplied.) This Court further held that the amount exacted for a license designed for regulation is not confined to the expense of issuing it, but "that a reasonable compensation may be charged for the additional expense of municipal supervision over the particular business or vocation, at the place where it is licensed." 70 Ala. at 364-65. This Court also held that if the reasonableness of the ordinance was questioned, "it will be presumed to be reasonable unless the contrary appears on the face of the law itself, or is established by proper evidence." 70 Ala. at 365.
The City of Troy had no such provision in its charter, but this Court held that Code 1907, § 1251 (now Code 1975, § 11-45-1), conferred police powers on Troy "to provide for the safety, preserve the health, promote the prosperity, improve the morals, order, comfort, and convenience of the *528 inhabitants of the municipality, and to enforce obedience to such ordinances;" and that this extended to the "police jurisdiction" as defined by Code 1907, § 1230 (now Code 1975, § 11-40-10). Standard Chemical & Oil Co. v. City of Troy, 201 Ala. 89, 77 So. 383 (1917).
The Legislature in 1923 passed an act (Act No. 434, Gen.Acts 1923, p. 580) that provided that any city with a population of not less than 30,000 and not more than 50,000 inhabitants, might fix and collect license fees for any business done outside the city limits, but within the police jurisdiction, in an amount not in excess of half of the license fee charged for a like business within the city limits. The City of Montgomery passed such an ordinance; and Walden, who operated a lumber yard in Montgomery's police jurisdiction and who refused to pay this license fee, was convicted of violating this ordinance. This Court held that the ordinance was valid and upheld Walden's conviction. Walden v. City of Montgomery, 214 Ala. 409, 108 So. 231 (1926).
Writing for a division of this Court, then-Justice Gardner wrote:
"The ordinance appears upon its face to have been enacted in the exercise of the police power, and is presumed to be reasonable. Van Hook v. City of Selma, 70 Ala. 361, 45 Am.Rep. 85; Standard [Chemical &] Oil Co. v. City of Troy, 77 So. 383, 201 Ala. 89, L.R.A.1918 C, 522. Nothing to the contrary is made to appear and we therefore hold the ordinance a valid exercise of the police power.
"Appellant sought to show that at the point where his lumber yard is located the service both as to fire and police protection was inadequate, but the trial court held such evidence immaterial to the issue presented. We think the ruling correct. These were executive and administrative matters, not involved in the question of the validity of the ordinance...."
214 Ala. at 411, 108 So. at 233.
Act No. 580, Acts of the Legislature 1927, p. 674, was for all intents and purposes identical to § 11-51-91, prior to the 1986 amendment of this section. By Act No. 580, the Legislature authorized any city or town within Alabama to fix fees for licensing any business, trade, or profession done within the police jurisdiction, but outside the corporate limits, in an amount not more than half the amount charged as a license fee for a "like business, trade or profession done within the corporate limits of such city or town."
The validity of such an act, applicable to cities within a particular population range, had been upheld by this Court the preceding year. Walden v. City of Montgomery, supra.
In Holt Civic Club v. City of Tuscaloosa, 439 U.S. 60, 74-75, 99 S.Ct. 383, 392, 58 L.Ed.2d 292 (1978), then-Justice Rehnquist, writing for the majority of the Court, wrote:
"Unincorporated communities like Holt dot the rim of most major population centers in Alabama and elsewhere, and state legislatures have a legitimate interest in seeing that this substantial segment of the population does not go without basic municipal services such as police, fire, and health protection. Established cities are experienced in the delivery of such services, and the incremental cost of extending the city's responsibility in these areas to surrounding environs may be substantially less than the expense of establishing wholly new service organizations in each community.
"Nor was it unreasonable for the Alabama Legislature to require police jurisdiction residents to contribute through license fees to the expense of services provided them by the city. The statutory limitation on license fees to half the amount exacted within the city assures that police jurisdiction residents will not be victimized by the city government.

"... Alabama's police jurisdiction statute, enacted in 1907, was a rational legislative response to the problems faced by the State's burgeoning cities. Alabama is apparently content with the results of its experiment, and nothing in the Equal Protection Clause of the Fourteenth *529 Amendment requires that it try something new." (Emphasis added.)
In Walden v. City of Montgomery, supra, decided the year before Act No. 580 (§ 11-51-91) was adopted, this Court held that an ordinance adopted by the City of Montgomery, pursuant to an act allowing municipalities within a particular population range that included Montgomery, to fix and collect license fees from businesses outside the city limits, but within the police jurisdiction, of half the amount charged to similar businesses within the city limits, "appears upon its face to have been enacted in the exercise of the police power and is presumed to be reasonable." The ordinance provided that it was to license for police and fire protection only, and not for revenue. The city was not required to prove the cost of providing fire and police protection to Walden, and Walden was not permitted to show that such protection was inadequate for his business, and therefore, worthless or of little value to his business.
This Court could have held, as it appeared to do in Walden, and as the United States Supreme Court did in Holt Civic Club v. City of Tuscaloosa, supra, that, as compensation for providing police and fire protection within a police jurisdiction, it was reasonable to charge a business within the police jurisdiction half of the amount charged to a similar business located within the city limits; or, at least, that an ordinance doing that was presumed to be reasonable and that the business challenging the validity of the ordinance had the burden of proving unreasonableness. This Court, instead, considered § 11-51-91 as a second limitation on the amount a municipality could charge a business within its police jurisdiction as a license.
Writing for this Court in Alabama Gas Co. v. City of Montgomery, 249 Ala. 257, 30 So.2d 651 (1947), then-Justice Livingston wrote:
"[T]he power granted in [the predecessor to Code of 1975, § 11-45-1,] now stands unimpaired, except that a license tax for a business conducted outside the city, but within the police jurisdiction cannot exceed one-half the amount charged [to] a like business done within the city [§ 11-51-91] and is the same power contained in Section 1251, Code of 1907, the Code section in force and effect when [Standard Chemical & Oil Co. v. City of Troy] was decided. So far as the power of a municipality to levy a license tax on a business conducted outside the city limits, but within the police jurisdiction, is concerned, [§ 11-51-91] added nothing to existing authority. That power is granted by [§ 11-45-1], ... which was in force when [§ 11-51-91] was enacted. [Section 11-51-91] does limit the amount which can be assessed to not more than one-half the amount charged and collected as a license for [a] like business, trade, etc., done within the corporate limits, fees and penalties excluded.... But the authority granted in [§ 11-45-1] was already limited. It is limited to an amount reasonably necessary for the protection of the lives, health and property of the citizens, the maintenance of good order and quiet of the community, and the preservation of public morals. Van Hook v. City of Selma, 70 Ala. 361, 45 Am.Rep. 85; Standard Chemical & Oil Co. v. Troy, supra; Decatur v. Poole, [238 Ala. 224, 189 So. 743 (1939) ]."
249 Ala. at 261-62, 30 So.2d at 655 (emphasis added).
The Legislature, with the 1986 amendment to § 11-51-91, has recognized that the one-half amount will not, in and of itself, make the ordinance reasonable or give it a rebuttable presumption of reasonableness, for the 1986 amendment added the additional proviso that had been judicially engrafted onto § 11-45-1: "that the total amount of such licenses shall not be in an amount greater than the cost of services provided by the city or town within the police jurisdiction."
Several cases, preceding Ex parte City of Leeds, contain language that indicates that the amount of the tax levied upon a particular business within a municipality's police jurisdiction "must reflect the reasonable *530 compensation for the expense of municipal supervision over the particular business." See Ex parte City of Leeds, 473 So.2d at 1061. Alabama Power Co. v. City of Carbon Hill, 234 Ala. 489, 175 So. 289 (1937), and Hawkins v. City of Prichard, 249 Ala. 234, 30 So.2d 659 (1947), are the first opinions of this Court that appear to contain language requiring a municipality to prove that its services to a business benefited that business by the amount of the imposed tax.
Alabama Power Co. v. City of Carbon Hill, supra, was tried upon a set of agreed facts, many of which, it could be argued, this Court had held were immaterial in Walden v. City of Montgomery, supra. It was agreed:
"[Appellant's public utility business is] `not harmful, hazardous, hurtful to public morals, productive of disorder, or injurious to the public. Neither the police, fire or other municipal authorities of plaintiff city have ever rendered or been called upon to render any service in connection with said business of defendant and plaintiff city has never incurred nor been subjected to any expense in connection with such business. The city... during said period has rendered police protection and supervision beyond its corporate limits, and within its police jurisdiction... consisting of making arrests for violations of State laws and municipal ordinances, preventing breaches of the peace and maintaining law and order, such protection and supervision being rendered by its regular police officers, who performed the same services within the city limits.'"
234 Ala. at 492, 175 So. at 291. (Emphasis supplied.) This Court concluded that if the business was "inherently or potentially injurious to the sanitation, health, peace, and comfort of the inhabitants," then it was not improper "to fix as a charge on such a business in the police jurisdiction an amount reasonably proportionate to the charge on such a business in the city." 234 Ala. at 493, 175 So. at 292. But in case of "useful and harmless occupations [only] an amount may be added for police supervision, such as the nature of the business requires." 234 Ala. at 493, 175 So. at 292. Alabama's affinity for sin taxes goes back over 50 years. In Hawkins v. City of Prichard, 249 Ala. 234, 30 So.2d 659 (1947), the mayor of Prichard testified that the city was collecting from service stations in the police jurisdiction money used for general revenue. "This frankly admits plaintiff's contention," this Court wrote, 249 Ala. at 239, 30 So.2d at 663. This Court held that the trial court should have decided whether the ordinance imposing the license on businesses within the police jurisdiction was reasonable, instead of submitting that question to a jury; and that in determining that, the trial court should be guided by the following:
"Cities in fixing their schedule of licenses should anticipate the amount to be needed for police, fire and sanitation, and other supervision, including use of its facilities, both within the city and in the police jurisdiction. And then allocate a reasonable amount of that for the police jurisdiction. And estimate the proper proportionate amount of that which should be chargeable to the various businesses there subject to a license tax by the city, so that each such business then licensed shall as near as possible pay an amount properly chargeable to its supervision and police protection, all of them together approximately covering the amount of the expense of the city for such purposes properly allocated to the police jurisdiction."
249 Ala. at 238-39, 30 So.2d at 663.
There are other cases that precede Ex parte City of Leeds in which it was written that the amount of the tax must reflect reasonable compensation for the expense of municipal supervision over the particular business. City of Hueytown v. Burge, 342 So.2d 339 (Ala.1977); Atlantic Oil Co. v. Town of Steele, 214 So.2d 331 (1968); Franks v. City of Jasper, 259 Ala. 641, 68 So.2d 306 (1953); State v. Sanderson *531 Equipment Co., 380 So.2d 298 (Ala.Civ. App.1979), cert. denied, 380 So.2d 299 (Ala. 1980); Town of Newville v. Price, 372 So. 2d 1314 (Ala.Civ.App.1979).
A municipality owes the residents of, and businesses located in, its police jurisdiction, the duty "to provide for the safety, preserve the health, promote the prosperity, and improve the morals, order, comfort, and convenience" of those residents and businesses. 201 Ala. at 92, 77 So. at 386. A municipality owes the sojourners who come into the police jurisdiction to work, to shop, and to visit, and the travelers who merely pass through, safety, health, order, comfort, morality, and convenience. Perhaps, it would have withstood constitutional scrutiny if this Court, as did the United States Supreme Court, had considered § 11-51-91, as a reasonable legislative attempt to establish a rational basis between the cost of these necessities of civilization and the payment therefor. Holt Civic Club v. City of Tuscaloosa, supra. Section 11-51-91 could have been viewed as a reasonable attempt to make certain that police jurisdiction residents were not taxed to provide general revenue for the city, or as Justice Rehnquist wrote, were not "victimized by the city government." We treated § 11-51-91 not as a rational fulfillment of the limitation that such license tax must pay for the municipality's fulfillment of its duties within the police jurisdiction, but as a limitation upon that limitation; and in doing so, we arrived at the 5-4 decision in Ex parte City of Leeds. Some of the Justices, by emphasizing the benefit-to-a-particular-business language in the opinions, opined that the license tax imposed upon a particular business could not exceed the cost of services rendered to that particular business. Other Justices, though not able to completely reconcile their views with the language of some previous opinions of this Court, nevertheless held that that was not the intention of those opinions. In Alabama Power Co. v. City of Carbon Hill and Hawkins v. City of Prichard, facts were stipulated or admitted that could have invalidated the assessments in those cases.
No business in a police jurisdiction "is an island, entire of itself." There are those who work for the business, those who provide raw materials or products to the business, and those who come to the business to shop or to haul away that business's finished product, who must traverse the roads and highways within the police jurisdiction. Employees of the business may live within the police jurisdiction in order to be in proximity to their workplace. The municipality's duties extend to these; and the cost of their safety, health, comfort, convenience, morality, and orderly movement within the police jurisdiction are reasonable expenses of municipal supervision of that business. The municipality owes a business within its police jurisdiction the duty to provide fire protection as well as police protection of its physical plant. Accidents, fires, crimes, and other hazards requiring the services of city government do not occur on such a regular basis that they can be measured or predicted as to each individual business. But in the world as it now is, they do happen; and the municipality must be prepared, with personnel and equipment, to respond to these calamities when they do occur. The costs of extra personnel and equipment needed to provide fire and police protection to that three-mile-wide area (if the municipality has a population of 6,000 or more) or that one-and-a-half-mile-wide area (for municipalities with a population of less than 6,000) that surrounds the municipality are reasonable expenses of municipal supervision of every business within that police jurisdiction.
This Court did not in Ex parte City of Leeds classify the business of Continental Electric Company as useful and helpful or as potentially injurious to sanitation, health, peace, and comfort, nor did it expressly overrule this distinction based upon the nature of the business. See Alabama Power Co. v. City of Carbon Hill, supra. Apparently, prior to the amendment of § 11-51-91, if a business in a police jurisdiction was inherently or potentially injurious to the sanitation, health, peace, and *532 comfort of the inhabitants, that business could be charged one-half the license fee charged to a similar business operating within the city limits; however, if the business was a "useful and harmless" business, the municipality was limited to one-half the fee charged to a similar business within the city limits orif lessan amount that reasonably related to the services rendered by the municipality to that business. See Continental Electric Co. v. City of Leeds, supra; Alabama Power Co. v. City of Carbon Hill, supra. This was an undue judicial limitation upon the power of the Legislature, not required by, and perhaps repugnant to, the fundamental law of the United States or of the State of Alabama; and an unreasonable judicially imposed burden that was not required by duly enacted legislation or the fundamental law of the United States or of the State of Alabama, upon municipalities, whose duties require them to provide for the safety, preserve the health, promote the prosperity, and improve the morals, order, comfort, and convenience, within their police jurisdiction.
To clarify the current state of the law, the majority opinion in Ex parte City of Leeds, supra, is hereby expressly overruled. That portion of Alabama Power Co. v. City of Carbon Hill, supra (as well as similar portions of other cases), that purports to allow a municipality to distinguish between useful and harmless businesses and businesses that are potentially injurious to sanitation, health, peace, and comfort, in setting a license fee for businesses within its police jurisdiction, is expressly overruled. That portion of those cases that holds or implies that a municipality must be able to relate the license fee levied upon a particular business within the police jurisdiction, but outside the city limits, to the cost of city supervision and services rendered in the past to that business at its physical plant is overruled. Hawkins v. City of Prichard, supra; City of Hueytown v. Burge, supra; Atlantic Oil Co. v. Town of Steele, supra; Franks v. City of Jasper, supra; State v. Sanderson Equipment Co., supra; Town of Newville v. Price, supra.
The standard to be applied, to cases arising before or after the April 29, 1986, amendment to Code 1975, § 11-51-91, is as follows:
A municipality must estimate the amount reasonably necessary to provide for the protection of the lives, health, and property of businesses and residents, and for the maintenance of good order and the preservation of public morals within its entire police jurisdiction. The municipality may then, by a properly adopted ordinance or resolution, set a license fee for businesses within its police jurisdiction, but outside its city limits, so that the total receipts from all such licenses do not exceed the amounts estimated to be reasonably necessary to provide these services to the police jurisdiction. No license fee charged to any business within the police jurisdiction, but outside the city limits, shall be more than one-half of the license fee charged to a similar business within the city limits. Such ordinances shall be presumed to be reasonable, and the burden shall be upon the business challenging the license fee charged to it to prove that such license fee is unreasonable or that the ordinance was illegally adopted or is violative of the statutory or fundamental law of the United States or of the State of Alabama.
For the foregoing reasons, the judgment of the Court of Civil Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and JONES, SHORES, ADAMS and STEAGALL, JJ., concur.
MADDOX, ALMON and BEATTY, JJ., dissent.
MADDOX, Justice (dissenting).
I am not convinced that Ex parte City of Leeds, 473 So.2d 1060 (Ala.1985), decided *533 just three years ago, was incorrectly decided; therefore, I must respectfully dissent.
ALMON and BEATTY, JJ., concur.
NOTES
[1] Code of 1975, § 11-51-91, as it was in effect prior to April 29, 1986, was as follows:

"Any city or town within the state of Alabama may fix and collect licenses for any business, trade or profession done within the police jurisdiction of such city or town but outside the corporate limits thereof; provided, that the amount of such licenses shall not be more than one half the amount charged and collected as a license for like business, trade or profession done within the corporate limits of such city or town, fees and penalties excluded; provided further, that when the place at which any such business, trade or profession is done or carried on is within the police jurisdiction of two or more municipalities which levy the licenses thereon authorized by this section, such licenses shall be paid to and collected by that municipality only whose boundary measured to the nearest point thereof is closest to such business, trade or profession; and provided further, that this section shall not have the effect of repealing or modifying the limitations in this division relating to railroad, express companies, sleeping car companies, telegraph companies, telephone companies and public utilities and insurance companies and their agents."
[2] In Webster's Third New International Dictionary (1971), the term "police" is defined as "the internal organization or regulation of a political unit (as a nation or state): the control and regulation of such a unit through the exercise of governmental powers" and "such control and regulation with respect to matters affecting general comfort, health, morals, safety, or prosperity of the public."

In Black's Law Dictionary (5th Ed. 1979), the term "police" is defined as "[b]ranch of government which is charged with the preservation of public order and tranquility, the promotion of the public health, safety, and morals, and the prevention, detection, and punishment of crimes."