MURDOCK, Justice.
 

 Dickson Campers, Inc. (“Dickson Campers”), filed a class-action complaint on January 17, 2003, against the City of Mobile (“the City”), alleging that it was representative of a class of approximately 200 businesses operating in the City’s police jurisdiction whose members, for the preceding two years, had paid both the City’s annual business-license tax and the City’s monthly gross-receipts privilege or license tax. Dickson Campers sought: (1) a judgment declaring void the license taxes levied on businesses in the City’s police jurisdiction pursuant to § 11-51-91, Ala.Code 1975; (2) an injunction against further collection of the taxes; (3) a refund of taxes paid; and (4) other relief, including costs and attorney fees.
 

 Following discovery and an evidentiary hearing on class certification, the trial court granted Dickson Campers’ motion for class certification with respect to those entities that had paid the annual business-license tax, but it denied Dickson Campers class certification with respect to entities that had paid the monthly privilege or license tax. Dickson Campers filed a motion to reconsider the trial court’s partial denial of class certification, but the trial court never ruled on the motion.
 

 The parties then filed cross-motions for a summary judgment. Following a hearing on the summary-judgment motions, the trial court denied Dickson Campers’ motion, granted the City’s motion, and entered a summary judgment in favor of the City without specifying the basis for its decision.
 
 [1]
 

 Dickson Campers appealed to this Court, asserting that the trial court erred in denying its request for class certification as to its claims regarding the monthly gross-receipts tax and that it erred in granting the City’s motion for a summary judgment as to Dickson Campers’ individual and class claims regarding the annual
 
 *152
 
 business-license tax. This Court transferred the case to the Court of Civil Appeals.
 

 The Court of Civil Appeals reversed the trial court’s judgment in its entirety.
 
 See Dickson Campers, Inc. v. City of Mobile,
 
 37 So.3d 134 (Ala.Civ.App.2007). The City petitioned this Court for a writ of certiora-ri. We denied the petition as to the issue whether Dickson Campers should be certified as a class representative for entities that paid the monthly gross-receipts tax. We granted the petition as to the issue whether the City’s ordinance imposing the annual business-license tax was valid according to the standard for cases arising under § 11-51-91 announced in
 
 State Department of Revenue v. Reynolds Metals Co.,
 
 541 So.2d 524 (Ala.1988).
 
 [2]
 

 I. Standard of Review
 

 Because we are reviewing the Court of Civil Appeals’ reversal of a summary judgment, our review is de novo. “On certiorari review, this Court accords no presumption of correctness to the legal conclusions of the intermediate appellate court. Therefore, we must apply de novo the standard of review that was applicable in the Court of Civil Appeals.”
 
 Ex parte Toyota Motor Corp.,
 
 684 So.2d 132, 135 (Ala.1996). “The law is well established that a de novo standard applies to appellate review of a trial court’s summary judgment.”
 
 Ex parte Patel,
 
 988 So.2d 957, 959 (Ala.2007) (citing
 
 Ex parte Fort James Operating Co.,
 
 895 So.2d 294 (Ala.2004)).
 

 lí
 
 Analysis
 

 Before April 29, 1986, § 11-51-91 provided, in pertinent part:
 

 “Any city or town within the state of Alabama may fix and collect licenses for any business, trade or profession done within the police jurisdiction of such city or town but outside the corporate limits thereof; provided, that the amount of such licenses shall not be more than one half the amount charged and collected as a license for like business, trade or profession done within the corporate limits of such city or town, fees and penalties excluded; provided further, that when the place at which any such business, trade or profession is done or carried on is within the police jurisdiction of two or more municipalities which levy the licenses thereon authorized by this section, such licenses shall be paid to and collected by that municipality only whose boundary measured to the nearest point thereof is closest to such business, trade or profession; and provided further, that this section shall not have the effect of repealing or modifying the limitations in this division relating to railroad, express companies, sleeping car companies, telegraph companies, telephone companies and public utilities and insurance companies and their agents.”
 

 Effective April 29, 1986, following this Court’s decision in
 
 Ex parte City of Leeds,
 
 473 So.2d 1060 (Ala.1985), which is discussed in more detail below, the legislature amended § 11-51-91 to read as follows:
 

 “Any city or town within the state of Alabama may fix and collect licenses for
 
 *153
 
 any business, trade or profession done within the police jurisdiction of such city or town but outside the corporate limits thereof; provided, that the amount of such licenses shall not be more than one half the amount charged and collected as a license for like business, trade or profession done within the corporate limits of such city or town, fees and penalties excluded; and provided further, that the total amount of such licenses shall not be in an amount greater than the cost of services provided by the city or town within the police jurisdiction; and provided further,
 
 no calculation is required, to be made by the municipal officials for the cost of services to any particular business
 
 or classification of businesses within the police jurisdiction so long as the total amount of such licenses collected in the police jurisdiction
 
 shall not be
 
 in an amount greater than the cost of services provided by the city or town
 
 to the police jurisdiction ...
 

 (Emphasis added.)
 
 [3]
 

 Thus, § 11-51-91 authorizes a municipality to collect license fees or taxes from businesses located within its police jurisdiction in order to defray the costs of providing municipal services within the police jurisdiction. Our caselaw has consistently held that the section prohibits the imposition of such taxes for purposes of raising general revenue.
 
 See, e.g., Hawkins v. City of Prichard,
 
 249 Ala. 234, 238, 30 So.2d 659, 662 (1947). Instead, the amount collected must reflect reasonable compensation to the municipality for the expense of providing municipal services in the police jurisdiction.
 
 See State Dep’t of Revenue v. Reynolds Metals Co.,
 
 541 So.2d 524 (Ala.1988).
 

 In 1997, the City enacted an ordinance imposing an annual business-license tax— equal to one-half the annual business-license tax paid by similar businesses located within the City’s corporate limits — on every business in its police jurisdiction. Dixon Campers began paying the annual business-license tax in 2001.
 

 In
 
 Reynolds Metals,
 
 Reynolds Metals Company, a corporation doing business within the police jurisdiction of Muscle Shoals, challenged Muscle Shoals’ imposition of a business-license tax upon it on the ground that Muscle Shoals had failed to reasonably relate the amount of the license tax imposed upon Reynolds Metals Company to the services rendered by Muscle Shoals in the past to Reynolds Metals Company. On the basis of this Court’s decision in
 
 Ex parte City of Leeds,
 
 supra, the trial court entered a summary judgment in favor of Reynolds Metals Company. The Court of Civil Appeals affirmed the trial court’s judgment, also citing
 
 Ex parte Leeds
 
 as its basis for doing so.
 

 This Court in
 
 Reynolds Metals
 
 reversed the judgment of the Court of Civil Appeals. In its analysis, this Court acknowledged that
 
 Ex parte Leeds
 
 and several other eases
 
 [4]
 
 endorsed the idea that municipalities must relate the business-license tax levied on particular businesses in a municipality’s police jurisdiction to the municipal services rendered to that particular business in the past. The Court noted,
 
 *154
 
 however, that in response to
 
 Ex parte Leeds,
 
 the legislature had amended § 11— 51-91 to provide that
 

 “ ‘no calculation is required to be made by the municipal officials for the cost of services to any particular business or classification of businesses within the police jurisdiction so long as the total amount of such licenses collected in the police jurisdiction shall not be in an amount greater than the cost of services provided by the city or town to the police jurisdiction.’ ”
 

 541 So.2d at 526.
 

 Even though the amendment took effect after the assessment of the business-license tax at issue in
 
 Reynolds Metals,
 
 this Court concluded that the legislature’s action merited a reexamination of
 
 Ex parte Leeds
 
 and other cases endorsing similar ideas with regard to license taxes imposed on businesses in the police jurisdictions of Alabama municipalities. Following an in-depth examination of this Court’s decisions in this area, the
 
 Reynolds Metals
 
 Court concluded that the mandate in
 
 Ex parte Leeds
 
 and similar restrictions placed on municipalities in other cases represented
 

 “an undue judicial limitation upon the power of the Legislature, not required by, and perhaps repugnant to, the fundamental law of the United States or of the State of Alabama; and an unreasonable judicially imposed burden that was not required by duly enacted legislation or the fundamental law of the United States or the State of Alabama, upon municipalities .... ”
 

 541 So.2d at 532. Accordingly, the Court explicitly overruled
 
 Ex parte Leeds
 
 and the portions of other cases to the same effect that required a municipality to relate the license tax levied on a particular business in its police jurisdiction to the services rendered by the municipality to that particular business in the past.
 

 In a further effort to “clarify the current state of the law,” the
 
 Reynolds Metals
 
 Court announced “[t]he standard to be applied to cases arising before or after the April 29, 1986, amendment to Code 1975, § 11-51-91” to be as follows:
 

 “A municipality must estimate the amount reasonably necessary to provide for the protection of the lives, health, and property of businesses and residents, and for the maintenance of good order and the preservation of public morals within its entire police jurisdiction. The municipality may then, by a properly adopted ordinance or resolution, set a license fee for businesses within its police jurisdiction, but outside its city limits, so that the total receipts from all such licenses do not exceed the amounts estimated to be reasonably necessary to provide these services to the police jurisdiction. No license fee charged to any business within the police jurisdiction, but outside the city limits, shall be more than one-half of the license fee charged to a similar business within the city limits. Such ordinances shall be presumed to be reasonable and the burden shall be upon the business challenging the license fee charged to it to prove that such license fee is unreasonable or that the ordinance was illegally adopted or is violative of the statutory or fundamental law of the United States or the State of Alabama.”
 

 541 So.2d at 532.
 

 In the present case, the mayor of the City at the time the ordinance was adopted, Michael C. Dow, testified by deposition that there were no line items in the City’s budget indicating what the City projected it would spend in providing municipal services in the City’s police jurisdiction despite the fact that the City knew at all times exactly how much revenue the City was receiving from the police jurisdic
 
 *155
 
 tion. Mayor Dow also acknowledged that he had been aware that state law required a municipality to see that “service levels” in the police jurisdiction were “up to” the revenue received from the police jurisdiction. Mayor Dow testified that in 1991 the State conducted an audit of City operations and determined that the City had spent more that year to provide municipal services in the police jurisdiction than it had received in revenue from the businesses in the police jurisdiction. Based on that assessment, Mayor Dow stated that he determined that if the City “kept putting more, percentage-wise” each year into municipal services in the police jurisdiction, the City would be “in line” with the formula approved by the State auditor. Mayor Dow stated that since 1991 the City had allocated more revenue each year for police-jurisdiction services in order to maintain a proper ratio between the amount of the business-license taxes imposed upon businesses in the police jurisdiction and the services provided in the police jurisdiction.
 

 For purposes of the litigation, the City hired Dr. G. Richard Thompson, a Clemson University economies professor, to make an after-the-fact assessment of what the City had spent in providing municipal services to the police jurisdiction from 2001 through 2003. Dr. Thompson used the City’s annual financial reports and population and service statistics and principles of cost accounting to arrive at the amount the City had spent providing municipal services in the police jurisdiction, but he acknowledged that his methods were inexact. The results of Dr. Thompson’s calculations showed that in the three-year period (2001, 2002, and 2003) the City had spent roughly as much on the cost of services in the police jurisdiction as it had received in total revenue from the police jurisdiction.
 
 [5]
 
 Dr. Thompson testified that it was virtually impossible for the City to estimate the cost of many of the municipal services it provided in the police jurisdiction. For fire and police protection, for example, the City would have no idea from day to day how many calls would be for a resident or business in the police jurisdiction. He stated, “So how do you estimate this in the future? You can only do what I did and estimate [the future expenses based on what] the past [expenses have been].”
 

 As noted, the trial court held that the City’s ordinance imposing an annual business-license tax on businesses in the City’s police jurisdiction was consistent with the provisions of § 11-51-91. Citing
 
 Reynolds Metals,
 
 however, the Court of Civil Appeals reversed the trial court’s judgment. The Court of Civil Appeals concluded that, since the 1991 State audit, the City had not properly determined what it spent on services for the police jurisdiction each year, though the population in the police jurisdiction had greatly increased since that time. The Court of Civil Appeals stated that, although it could not “say that the City of Mobile made
 
 no effort
 
 to relate the taxes charged to the cost of services provided[,] ... neither can we say that the effort the City
 
 did
 
 make was adequate under the circumstances.”
 
 Dickson Campers,
 
 37 So.3d at 144. The Court of Civil Appeals thus concluded that the City’s approach did not satisfy the standard set out in
 
 Reynolds Metals,
 
 reasoning:
 

 “A fair reading of
 
 Reynolds Metals
 
 indicates that our supreme court did not
 
 *156
 
 mandate any specific formal steps that a municipality had to undertake in the budgeting process before it could levy a tax in the police jurisdiction. That said, however, it is reasonable to believe that our supreme court recognized that the term ‘estimate’ would have different meanings in different contexts — that a process of estimation that would be appropriate for one municipality might be wholly inadequate for another. For example, a municipality whose police jurisdiction extends over an area of one square mile, contains four businesses, and has experienced no appreciable growth in recent years will be able to estimate fairly easily and quickly the likely cost of the municipal services it will provide in the police jurisdiction for the coming year. On the other hand, a major metropolis with a sprawling police jurisdiction whose population has been burgeoning in recent years and includes dozens of new residential subdivisions and hundreds, if not thousands, of businesses may not be able to estimate the cost of the services it will be called upon to render in the police jurisdiction without a more extensive analysis.”
 

 37 So.3d at 144.
 

 The City argues that the conclusion of the Court of Civil Appeals in
 
 Dickson Campers
 
 that the City did not perform an “estimate” that was “adequate under the circumstances” for meeting the standard imposed in
 
 Reynolds Metals
 
 imposes “an undue judicial limitation” on the City that is not required by the language of either § 11-51-91 or
 
 Reynolds Metals.
 
 The City notes that § 11-51-91 does not state that a municipality must perform an “estimate” of any kind before imposing a license tax on businesses in its police jurisdiction. It merely requires that “the total amount of such licenses
 
 shall not be
 
 in an amount greater than the cost of services provided by the municipality within the police jurisdiction.” § -11-51-91 (emphasis added).
 

 The City notes that the Court of Civil Appeals itself described the requirement in
 
 Reynolds Metals
 
 as “only the most general of guidelines.”
 
 Dickson Campers,
 
 37 So.3d at 143. The City argues that it could not have been expected to know, based upon the general guidance provided in
 
 Reynolds Metals,
 
 that, before enacting an ordinance imposing the annual business-license tax on businesses in the police jurisdiction, it needed to perform an exact accounting of the costs of the municipal services provided in the police jurisdiction in the prior years.
 

 Mayor Dow testified that the City learned from an audit conducted in 1991 that the City had spent more that year to provide services in its police jurisdiction than it had received in revenue from businesses in that police jurisdiction. Thereafter, according to Mayor Dow’s testimony, the City continued to dedicate more funds each year to provide municipal services in the police jurisdiction, thereby ensuring that expenditures on municipal services in the police jurisdiction would continue to outpace the revenue generated by license taxes imposed on businesses in the police jurisdiction.
 
 Moreover,
 
 the City argues that the numbers provided by Dr. Thompson in his assessment of the three-year period during which Dickson Campers paid the annual business-license tax confirm that the City did in fact comply with the statutory requirement that it spend as much or more on municipal services in the police jurisdiction than it collected in license taxes. Thus, the City contends that the ordinance is in compliance with § 11— 51-91 and that it fulfilled the purpose of that statute, which it says is to prevent municipalities from taxing businesses in police jurisdictions to raise general revenue for a municipality.
 

 
 *157
 
 Dickson Campers responds by arguing that the City’s position is contrary to the Court’s opinion in
 
 Reynolds Metals.
 
 Dickson Campers relies upon the statement in
 
 Reynolds Metals
 
 that provided that “[a] municipality must estimate the amount reasonably necessary” to provide for services in the police jurisdiction and that “the total receipts from all such licenses” must not “exceed the amounts estimated to be reasonably necessary to provide these services to the police jurisdiction.” 541 So.2d at 532. Dickson Campers contends that these statements are clear and unequivocal in commanding municipalities to determine, based on past expenses, a general amount that it will cost the municipality to provide services in the police jurisdiction before a municipality enacts a business-license tax on businesses in the police jurisdiction. It argues that the City completely failed to follow the standard set out in
 
 Reynolds Metals
 
 because the only time the City actually estimated the cost of providing future services in the police jurisdiction based on past expenses was after the 1991 State audit — a full six years before the City enacted the ordinance at issue.
 

 The Court of Civil Appeals and Dickson Campers read too much into the standard provided in
 
 Reynolds Metals
 
 for municipal compliance with § 11-51-91. It is clear that the
 
 Reynolds Metals
 
 Court intended to clarify the law in articulating its standard, but, as the Court of Civil Appeals observed, the
 
 Reynolds Metals
 
 Court simply provided a general guideline.
 
 [6]
 
 The standard was not intended to add more restrictions upon municipalities than are imposed in § 11-51-91. In fact, “this Court is not at liberty to rewrite [a] statute or to substitute its judgment for that of the legislature.”
 
 Gowens v. Tys. S.,
 
 948 So.2d 513, 522 n. 1 (Ala.2006). If anything, the intention of the Court’s opinion in
 
 Reynolds Metals
 
 was to remove “undue judicial limitations upon the power of the Legislature” that are not required by the law. 541 So.2d at 532.
 

 The City is correct in its argument that § 11-51-91 simply states that “the total amount of [business] licenses [in the police jurisdiction]
 
 shall not be
 
 in an amount greater than the cost of services provided by the city or town within the police jurisdiction.” (Emphasis added.) When this Court stated in
 
 Reynolds Metals
 
 that “[a] municipality must estimate the amount reasonably necessary to provide for” services, its purpose was to explain, as it expressly stated, that a municipality should do this in the aggregate for “its entire police jurisdiction,” rather than on a licensee-by-licensee basis. Nor do we read
 
 Reynolds Metals
 
 as purporting to add to the otherwise clear standard expressed by the legislature in § 11-51-91 a mechanical order of actions that, if not performed by a municipality in a prescribed sequence, would invalidate a business-license-tax ordinance. Instead, the Court was merely pointing out the practical reality that, in order that a municipality might maintain a statutorily compliant revenue-to-expense ratio, it generally will be necessary for the municipality to have a reliable idea of the cost of providing municipal services in its police jurisdiction as a whole.
 

 Nor did the
 
 Reynolds Metals
 
 Court presume to tell municipalities how they must obtain the information upon which they rely in setting the amount of business-license taxes, nor the degree of detail re
 
 *158
 
 quired in such information before municipalities may impose business-license taxes based on that information. Accordingly, the Court of Civil Appeal erred in this case in reversing the judgment of the trial court on the ground that a city such as Mobile— “a major metropolis with a sprawling police jurisdiction” — necessarily must do “a more extensive analysis” if it is to comply with § 11-51-91.
 

 Whether the particular manner in which the City arrived at the business-license taxes at issue in the present case was the most professional or prudent way of doing so is not a question that is before us. If the legislature wishes to require something more in this regard, it might be presumed that it could do so. It has not already done so in § 11-51-91, however, and neither did this Court presume to do so in
 
 Reynolds Metals.
 
 Accordingly, the Court of Civil Appeals erred in reversing the trial court’s summary judgment in favor of the City as to this issue. The judgment of the Court of Civil Appeals is reversed and the cause remanded to that court for the entry of a judgment consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 COBB, C.J., and LYONS, WOODALL, STUART, SMITH, BOLIN, PARKER, and SHAW, JJ., concur.
 

 [1]
 

 . In the hearing, counsel for Dickson Campers made it clear that Dickson Campers would consider a ruling in favor of the City on the motions for a summary judgment to be an effective denial of its motion to reconsider the trial court’s denial of class certification with respect to the monthly gross-receipts tax.
 

 [2]
 

 . In our order granting certiorari review, we also directed the parties to address whether the trial court had disposed of Dickson Campers' individual claim regarding the monthly gross-receipts tax and whether any finality-of-judgment issues were presented in this regard. Based on our review of the City’s motion for a summary judgment and the trial court's order granting that motion, we conclude that the trial court did, in fact, enter a judgment against Dickson Campers on its individual claim regarding the monthly gross-receipts tax when it ruled on the City's motion for a summary judgment.
 

 [3]
 

 . Section 11-51-91 was further amended in 2006; the 2006 amendments are not pertinent to this case, and all quotations from the statute are from the statute as it read before the 2006 amendments.
 

 [4]
 

 . Those cases included:
 
 City of Hueytown v. Burge,
 
 342 So.2d 339 (Ala.1977);
 
 Atlantic Oil Co. v. Town of Steele,
 
 283 Ala. 56, 214 So.2d 331 (1968);
 
 Franks v. City of Jasper,
 
 259 Ala. 641, 68 So.2d 306 (1953);
 
 Hawkins v. City of Prichard,
 
 249 Ala. 234, 30 So.2d 659 (1947);
 
 State v. Sanderson Equip. Co.,
 
 380 So.2d 298 (Ala.Civ.App.1979), cert. denied, 380 So.2d 299 (Ala.1980); and
 
 Town of Newville v. Price,
 
 372 So.2d 1314 (Ala.Civ.App.1979).
 

 [5]
 

 . For 2001, Dr. Thompson estimated the costs for services to be $19,740,685 while the total revenue from the police jurisdiction was $17,685,761. For 2002, the estimated costs were $21,055,311 and the total revenue was $21,264,402. For 2003, the estimated costs were $20,618,981 and the total revenue was $20,970,887.
 

 [6]
 

 . Indeed, the
 
 Reynolds Metals
 
 standard was not even necessary to the outcome of that case.
 
 See, e.g., Ex parte Williams,
 
 838 So.2d 1028, 1031 (Ala.2002) (stating that "obiter dictum is, by definition, not essential to the judgment of the court which states the dictum, [and therefore] it is not the law of the case established by that judgment”).